Jewell W. VANDERVEER, Plaintiff,

v.

ERIE MALLEABLE IRON COMPANY, Defendant.

Civ. A. No. 326.

United States District Court
W. D. Pennsylvania.

March 28, 1956.

Ralph H. Hammer, Erie, Pa., for plaintiff.

Julian Miller, Pittsburgh, Pa., for defendant.

WILLSON, District Judge.

This case appeared on the March 1956 argument list at Erie. Three motions were heard: (1) defendant's motion for summary judgment under Rule 56, Fed. Rules Civ.Proc. 28 U.S.C.A.; (2) defendant's motion under Rule 12 to strike plaintiff's "Reply and Counterclaim"; and (3) defendant's objections to certain interrogatories propounded by plaintiff. As defendant's first motion will be granted it is unnecessary to comment on motions (2) and (3).

In this court plaintiff sued defendant for patent infringement. The complaint was filed August 27, 1954. The jurisdiction is founded upon 28 U.S.C.A. § 1338. The complaint shows that plaintiff is a resident of Pennsylvania and the defendant is a Pennsylvania corporation having its principal place of business in Erie, Pennsylvania. In its answer defendant denied generally the charge of infringement; it set up certain affirmative defenses and then counterclaimed for declaratory judgment under 28 U.S. C.A. §§ 2201 and 2202. Plaintiff then filed a reply and counterclaim. The case first came before me on defendant's motion for a stay filed April 15, 1955. In this motion defendant recited an action brought by plaintiff against the defendant in the Court of Common Pleas of Erie County, Pennsylvania, at No. 407 September Term, 1951 in which plaintiff sought an accounting under a licensing agreement between the parties. The defendant prevailed in that lawsuit in a decision entered July 28, 1954, which was affirmed by the Common Pleas Court sitting en banc on November 22, 1954, and an appeal therefrom was taken by the plaintiff, which was pending in the Supreme Court of Pennsylvania at the time the motion to stay was before me. This court filed a memorandum opinion and order on May 19, 1955, staying all proceedings until final determination of the action then pending between the same parties in the state courts of Pennsylvania. A final decision of the Supreme Court of Pennsylvania was handed down January 3, 1956, at 384 Pa. 12, 119 A.2d 204, in which the decree of the lower court was affirmed. Thus the state court litigation has now terminated in defendant's favor.

A portion of what was said in my memorandum opinion is best repeated here for the sake of clarity and to point up the present issue. In referring to the state court litigation it was stated:

"The litigation concerns an agreement between the parties dated August 29, 1930, wherein plaintiff Vanderveer and defendant entered into a written agreement whereby defendant agreed to pay to plaintiff certain royalties on his inventions represented by certain named patent applications. Paragraph 8 of the Contract provided that if the defendant 'shall cease to manufacture under any of the above inventions, or any patent that may be issued thereon, such particular invention or patent, shall at once be reassigned free from all encumbrances and outstanding licenses to the said Inventor upon his request.' In the decision in the action in the Court of Common

342

Pleas of Erie County, Judge Laub stated the issue to be:

"'* * * The complaint charges that, in violation of a written agreement between the parties, the defendant company has refused to pay plaintiff certain royalties in the manufacture of demountable rim wheels invented by plaintiff Vanderveer. The defendant alleges that the agreement has terminated and that subsequent to the termination it has not manufactured any wheels which are encompassed by the terms of the written agreement; specifically it pleads non-user of plaintiff Vanderveer's inventions since May 10, 1949, the last royalty paying period; and the plaintiffs seek an account of wheels made since that date.'

"The fifteenth, sixteenth and seventeenth findings in Judge Laub's decision are:

"'15. From May 10, 1949, the date of the last royalty-paying period, defendant has manufactured wheels which do not contain a milled or other slot or channel in the spoke-end surfaces. It has not manufactured or sold any of the slotted or grooved-type wheels described in the preferred application of Vanderveer's Patent 2,178,316 since May 10, 1949. The wheels manufactured by defendant since May 10, 1949, consist in spoke-end wheels having a plain barrel diameter or face, with a tapered seat in the inner periphery.

"'16. From May 10, 1949, the defendant has not manufactured wheels which are in any way applicable to Patent No. 2,178,316.

"'17. The wheels manufactured and sold by defendant since May 10, 1949, do not infringe Patent No. 2,-178,316 and particularly Claim 13 thereof.'

"It is noticed that in this present infringement action defendant's answer says, referring to the same type of wheel covered by the patent in issue, paragraph 7, '* * * defendant ceased in 1943 to manufacture and in 1945 to sell that patented type of wheel, and since * * * has made and sold only wheels of a non-infringing type.' Thus, one of the issues before me, and perhaps the paramount one, is whether defendant has been manufacturing wheels which infringed the patent. That same issue has been litigated in the state court and is pending on appeal with respect to the contract between the parties, because plaintiff alleges royalties are due under the agreement. Of course, if defendant has been manufacturing and marketing the patented wheel, then it follows that royalties are due up to a certain date and that the patent is infringed thereafter. The same facts and circumstances prove or disprove the contentions of the parties in the issue in the Federal Court as control in the issue in the state court. It is apparent from the adjudication in the state court that the issues were given most careful consideration. Plaintiff has voluntarily submitted the issue as to royalties under the agreement for decision prior to the filing of this case, and in the state decision Judge Laub says, '* * * The parties are in agreement that in a case such as this the law leads us through the same doorway in a suit for royalties as it does in an infringement case.' Therefore, it seems appropriate and desirable that a final decision in the litigation pending in the Supreme Court of Pennsylvania be had prior to further proceedings in the Federal Court on the patent infringement issue. The motion to stay will be granted."

It appeared to me that at the time the motion to stay was argued and granted that a final decision in defendant's favor in this instance would dispose of the Federal Court litigation on the infringement issue as to Patent 2,178,316. It is noticed that the period in Judge Laub's opinion is short. It is from May 10, 1949 to July 5, 1949. May 10, 1949, is the date plaintiff in writing directed defendant to assign to plaintiff Patent 2,-

178,316. In his letter plaintiff expressly denied waiver of the right to enforce claims for patent infringement from defendant's use of said patent without paying royalties as prescribed in the agreement between them. However short the period of time with which Judge Laub was concerned, he made very careful findings of fact, particularly findings numbered 15, 16 and 17, which have been quoted. The issues in the state court were determined after a trial on the merits. The Supreme Court of Pennsylvania in its opinion stated [384 Pa. 12, 119 A.2d 205]:

> "The findings of the learned chancellor are supported by substantial evidence and received confirmation by the court en banc. On the basis of the findings, the chancellor correctly concluded that the defendant did not use the plaintiffs' patent after the date of the termination of the licensing agreement; that the defendant accounted fully to the plaintiffs for all wheels produced under the license; and that the wheels produced by the defendant subsequent to the date of the termination of the licensing agreement did not infringe the plaintiffs' patent. The learned court was therefore warranted in entering the decree in favor of the defendant at the plaintiffs' costs."

Accompanying defendant's motion for summary judgment is the affidavit of Paul H. Vincent, General Manager and Director, in support of defendant's contention that all wheels made, sold or used by defendant from May 10, 1949 to the present time were the same type that were held in the state court proceedings not to infringe the patent here in suit. Plaintiff does not controvert the affidavit in the sense of asserting that defendant changed or altered the design of its wheel after May 10, 1949, but plaintiff simply says that the wheel being manufactured on May 10, 1949, and which defendant still manufactures infringes his patent. Under Rule 56(c) it appears to this court that defendant should prevail

on its present motion as the pleadings, affidavit and state court decision show that there is no genuine issue as to any material fact. It is believed that plaintiff is precluded as a matter of law from relitigating in this court the issue of infringement of Patent 2,178,316.

It is observed that the complaint in this court was filed within a month after the decision of Judge Laub against plaintiff. Plaintiff was the inventor, but the patent was issued to the defendant on October 31, 1939, pursuant to the royalty contract or licensing agreement between the parties. Judge Laub fixed July 5, 1949, which was the date plaintiff demanded the assignment of the patent to him, as the termination date of the royalty agreement, although the patent was not actually assigned to plaintiff until November 15, 1949. The reason therefor was not ascribed to any fault of the defendant. In his complaint plaintiff says that on November 15, 1949 defendant assigned the patent to him and since that date he has been and still is the owner of the patent.

In the fifth paragraph of the complaint, plaintiff says defendant has for a long time past been and still is infringing said patent, particularly Claims 10 and 13, and will continue to do so. It is undisputed, of course, that defendant at one time manufactured and sold the demountable rim wheels under the provisions of the contract between the parties. It appears, however, from the state court findings that about 1943 defendant stopped manufacturing the wheel covered by plaintiff's patent. Plaintiff says, however, that from 1939 to September 6, 1949 defendant marked its wheels alleged to infringe with the patent number. The state court found in its eighth finding of fact that defendant ceased making the wheels having a milled slot in 1943, but sold some such wheels in 1945 and none were sold after 1945. The court found that the wheels manufactured by defendant after May 10, 1949 consisted of spoke-end wheels having a plain barrel diameter or face, with a tapered seat in the inner

periphery. The last four findings of the state court should be repeated in full and they are:

"17. The wheels manufactured and sold by defendant since May 10, 1949, do not infringe Patent No. 2,-178,316 and particularly Claim 13 thereof.

"18. Some wheels manufactured by defendant subsequent to May 10, 1949, were marked with the patent number 2,178,316, but no such wheels were made subsequent to September 1949.

"19. The appearance of the patent number 2,178,316 on some wheels manufactured by defendant up to September 1949 was due to inadvertence.

"20. The plaintiffs are not entitled to an accounting."

This court understands that on the question as to whether there is any genuine issue of fact remaining between these parties, plaintiff's position is that despite the state court finding to the contrary, defendant is making a wheel, and has been making a wheel, which is infringing his patent. At argument on this motion, plaintiff's counsel indicated that Judge Laub was wrong because he restricted plaintiff to a too short period. Nevertheless, an examination of Judge Laub's decision shows that he considered the question of the manufacture of the wheel by defendant from 1943 to July 5, 1949. This was necessarily so, as Judge Laub had the issue before him as to whether royalties were due under the contract and until the contract was terminated, which was done by the plaintiff, not the defendant, as plaintiff invoked the provision of paragraph 8 of the agreement.

It is believed that the decision of the Supreme Court of Pennsylvania was dispositive of the present issue before me. Plaintiff's position is, however, that the state court decision in no way controls or precludes the infringement case in the Federal Court. Plaintiff says, for instance, that his claim for patent infringement is one on which this court has exclusive jurisdiction and that it cannot decline to exercise that jurisdiction. He also says that defendant's counterclaim for declaratory judgment is broader than plaintiff's claim for patent infringement. He says it involves all claims of the patent and that if all claims are held to be invalid as defendant prayed in its counterclaim, then the patent will be completely destroyed and defendant will have complete freedom to make the kind of wheels it admits to be "patented" as well as the wheels it now contends are "non-infringing." Plaintiff says that defendant must have realized that its counterclaim opened the door for a counterclaim by plaintiff, which issues must be determined by this court. Plaintiff's reply and counterclaim alleges a breach of trust on the part of the defendant. He says this breach of trust does not depend upon the construction and validity of the patent claims, but depends on whether the defendant dealt fairly with plaintiff from 1927 to 1949, when defendant had full control of plaintiff's inventions. In his counterclaim, plaintiff demands (a) return of royalties which defendant spent to obtain Patent 2,178,316 on the basis that it was a broad patent; and (b) the payment of the money plaintiff could have obtained by licensing defendant's competitors if defendant had informed plaintiff in 1943 it was no longer manufacturing under the patent, so plaintiff could get back his patent under paragraph 8 of his royalty contract.

■ It is believed, however, that the counterclaim filed by defendant as part of its answer did not open the door to the extent suggested by plaintiff. The provisions of Rule 8(e) (2) should be noticed here. It provides that a party may state as many separate claims or defenses as he has, regardless of consistency and whether based on legal or on equitable grounds or on both. Thus the mere pleading by defendant of several defenses in its answer to a complaint charging infringement does not open the door for plaintiff to create by

a reply and counterclaim the issue of breach of trust and issues on other matters of difference between the parties extending back many years, in a non-diversity case. The jurisdiction here is based on the patent law. The mere fact that defendant confronted plaintiff with several defenses, one of which disposes of the infringement issue which is the only federal question involved, does not permit the court as suggested by plaintiff, to decide nonfederal issues. As defendant here was the owner of the patent involved, and a licensee during part of the period it is certainly doubtful that it may by counterclaim inquire into the validity of the patent. In the contract between the parties the defendant was required to defend the patent at all times. It cannot now assert invalidity. See Sbicca-Del Mac, Inc., v. Milius Shoe Co., 8 Cir., 145 F.2d 389.

Nevertheless, plaintiff asserts that because defendant claimed the right to question the validity of the patent that plaintiff is now privileged to raise a nonfederal issue by reply and counterclaim. Plaintiff's difficulty, however, is that his claim for relief in his counterclaim cannot stand independently of the infringement issue. As there is no diversity of citizenship between the parties the plaintiff's counterclaim in his reply has no support independent of the infringement issue. This court has no jurisdiction of the issues raised in plaintiff's reply and counterclaim. See General Motors Corporation v. Rubsam Corporation, 6 Cir., 65 F.2d 217 and Dubil v. Rayford Camp & Co., 9 Cir., 184 F.2d 899. See the discussion in Moore's Federal Practice, Volume 3, Section 13.-08 on counterclaim and reply and Section 13.19 on jurisdiction as to permissive counterclaims.

Having decided that plaintiff has raised no federal issue of which this court has jurisdiction in the counterclaim contained in his reply, defendant is entitled to prevail on its motion. The reason is plaintiff is estopped by the state judgment.

It is my view that the plaintiff in this court is estopped from again litigating material facts contrary to the findings of fact upon which the state court judgment was rendered. In the contract action between the parties, begun by the plaintiff, the state court passed upon the issue of infringement as a question collateral to the suit upon the contract. The Pennsylvania Supreme Court says it had authority to do so. I agree. But two decisions need to be cited:

Becher v. Contoure Laboratories, 279 U.S. 388, 49 S.Ct. 356, 357, 73 L.Ed. 752, where the Supreme Court said:

"That decrees validating or invalidating patents belong to the Courts of the United States does not give sacrosanctity to facts that may be conclusive upon the question in issue. A fact is not prevented from being proved in any case in which it is material, by the suggestion that if it is true an important patent is void—and although there is language here and there that seems to suggest it we can see no ground for giving less effect to proof of such a fact than to any other. A party may go into a suit estopped as to a vital fact by a covenant. We see no sufficient reason for denying that he may be equally estopped by a judgment. [Citing cases.]"

Also, Cavicchi v. Mohawk Mfg. Co., D.C., 34 F.Supp. 852, in which the court indicated that the plaintiff was estopped by the judgment in the state court. Plaintiff urged an arbitration and defendant acquiesced. The controversy was whether plaintiff's product infringed defendant's patent. The arbitration proceeding resulted in an award to defendant and confirmation by the State of New York courts. Judge Goddard held that the state court award was effective as an "estoppel" precluding plaintiff from thereafter maintaining an action in the Federal Court for declaratory judgment that plaintiff's product did not infringe defendant's patent.

It is believed that the two decisions cited control the issue on defendant's motion for summary judgment. Estoppel is a bar to the plaintiff for the period ending July 5, 1949.

Defendant's affidavit, uncontroverted by plaintiff, supports the proposition that defendant's present wheels do not infringe plaintiff's patent. The wheels manufactured and sold by defendant after July 5, 1949 are the same non-infringing wheels that were manufactured and sold by defendant from 1943 to July 5, 1949.

Defendant is entitled to judgment and an order will be entered.