**LORRAINE MOTORS, INC., Plaintiff,**

v.

**The AETNA CASUALTY AND SURETY COMPANY, Defendant.**

**The AETNA CASUALTY AND SURETY COMPANY, Third-Party Plaintiff,**

v.

**Frederick J. BENES, Third-Party Defendant.**

**Civ. No. 18892.**

United States District Court
E. D. New York.

Sept. 16, 1958.

David M. Engelson, New York City, for plaintiff.

Maurice, McNamee & White, New York City, for defendant and third-party plaintiff, Robert B. White, New York City, of counsel.

Thomas W. Fleckenstein, Bellmore, N. Y., for third-party defendant.

ZAVATT, District Judge.

This motion calls for an interpretation of the Act of Congress, Public Law No. 85–554, 85th Congress (July 25, 1958), 72 Stat. 415, which amended Title 28 U.S.C.A. § 1332 so as to increase the jurisdictional requirement as to amount in controversy in diversity of citizenship cases. Section 1332, as so amended, now gives this court jurisdiction in diversity cases only where the amount in controversy exceeds the sum of $10,000, exclusive of interest and costs. However, Section 3 of the Act provides:

"Sec. 3. This Act shall apply only in the case of actions commenced after the date of the enactment of this Act."

In the instant case, the action was "commenced" in the City Court of the City of New York, Queens County, New York, prior to July 25, 1958, the effective date of the Act, to wit, on July 16, 1958. The complaint seeks damages in the sum of $5,000 plus interest and costs. The action was removed by the defendant to this Court after the effective date of the Act, to wit, on or about July 29, 1958. The independent research of the Court reveals no reported case in which the specific question now before the Court has been raised or determined. The plaintiff moves to remand the case to the City Court upon the ground that the $10,000 requirement was not met at the time the action was removed to this Court. The defendant opposes remanding on the ground that, since the action met the $3,000 amount in controversy requirement of 28 U.S.C.A. § 1332 as that section provided when the action was "commenced" in the City Court, this case comes within the scope of Section 3 of the Act and, therefore, the $10,000 requirement does not apply.

The plaintiff moves to remand upon an additional ground based upon 28 U.S.C.A. § 1332(c), as amended by the Act. A corporation is now deemed "a citizen of any State by which it has been incorporated and of the State where it has its principal place of business". Upon this motion to remand the contention is made by the plaintiff, and controverted by the defendant, that the defendant has its principal place of business in the State of New York. Plaintiff, a citizen of New York, contends that there is no diversity of citizenship because under 28 U.S.C.A. § 1332, as amended, the defendant is to be deemed a citizen of New York where, it is claimed, it has its principal place of business. It is unnecessary to consider this added ground upon which plaintiff moves to remand, in view of the Court's determination as to the effect of Section 3 of the Act.

Section 3 of the Act provides that it "shall apply only in the case of actions commenced after the date of the enactment" thereof, and here lies the nub of the problem presented by the instant motion. Section 1441 of Title 28 U.S.C.A. provides that except as otherwise provided, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending". If the action instituted in the City Court on July 16, 1958 was an action "commenced" within the meaning of Section 3 of Public Law 85–554 so as to render said Act inapplicable, the controversy is one over which this Court has original jurisdiction, and was properly removed subsequent to July 25, 1958. If, on the other hand, an action is not commenced within the meaning of Section 3 until it is actually commenced in the District Court, by removal or otherwise, Public Law 85–554 applied when the removal from the City Court was effected and the proceeding is not one of which this Court has original jurisdiction, being for an amount less than $10,000, exclusive of interest and costs.

The Committee Reports which accompanied H.R. 11102, subsequently enacted as Public Law 85–554, do not indicate whether Section 3 of the Act is to be construed to refer only to cases "commenced" in the District Courts or is meant to embrace cases "commenced" in the State courts which were potentially removable to the federal courts prior to July 25, 1958. See H.Rept.No. 1706, S.Rept.No. 1830, 85th Cong., 2d Sess. (1958); 1958 U.S.Code Cong. and Admin. News, p. 2593 et seq. However, it is known that the Act itself was passed in an effort to meet a heavy increase in the caseload of the United States District Courts. The committees reporting on the bill felt that it would bring the minimum amount in controversy in diversity of citizenship and "fed-

eral question" cases "up to a reasonable level by contemporary standards and that it will ease the workload of our Federal courts by reducing the number of cases involving corporations which come into Federal district courts on the fictional premise that a diversity of citizenship exists". 1958 U. S. Code Cong. and Admin. News, pp. 2593, 2595. Of course, the purpose of making the amount in controversy in a case determinative of jurisdiction has always been to prevent the dockets of the federal courts from being overcrowded with small cases which should be brought in the State courts which are fully equipped to decide such cases. Tlusty v. Gillespie-Rogers-Pyatt Co., D.C.E.D.N.Y.1940, 35 F.Supp. 910.

Although an analysis of the provisions indicating the effect of a number of other amendments to the statutes conferring original and removal jurisdiction upon the United States courts will not enable a definitive construction of Section 3 of Public Law 85–554, it will indicate what the Congress *may* have had in mind in so providing. The Judiciary Act of 1789 fixed the amount in controversy necessary to jurisdiction in diversity of citizenship cases at a sum in excess of $500, and provided for the removal of such cases from the State courts. September 24, 1789, c. 20, 1 Stat. 78. The amount in controversy necessary to give jurisdiction was increased to a sum in excess of $2,000 by the Judiciary Act of 1887–1888. March 3, 1887, c. 373, 24 Stat. 552; August 13, 1888, c. 866, 25 Stat. 433. Said Act provided that any suit of a civil nature *of which the Circuit Courts of the United States were given jurisdiction therein* might be removed from a State court in which it was pending, and provided further that "this act shall not affect the jurisdiction over or disposition of *any suit removed from the court of any State,* or suit commenced in any court of the United States, *before the passage hereof * * *"* Id., §§ 2, 6. (Emphasis added.) The Judicial Code of 1911, March 3, 1911, c. 231, 36 Stat. 1087, increased the jurisdictional amount in

controversy requirement to a sum in excess of $3,000. And Section 28 thereof provided that any suit of a civil nature *"of which the district courts of the United States are given jurisdiction by this title,"* might be removed from a State court by the non-resident defendants therein. (Emphasis added.)

Both the Act of May 14, 1934, c. 283, 48 Stat. 775, and the Act of August 21, 1937, c. 726, 50 Stat. 738, restricted the removal jurisdiction of the United States District Courts; the former with regard to suits relating to certain orders of State administrative boards, and the latter with regard to certain suits to enjoin, suspend or restrain the assessment, levy or collection of State taxes. Both Acts specifically provided that their provisions "shall not affect suits *commenced in the district courts, either originally or by removal,* prior to [their] passage; and all such suits shall be continued, proceedings therein had, appeals therein taken, and judgments therein rendered, in the same manner and with the same effect as if this Act had not been passed". (Emphasis added.)

It is thus seen that previous limitations upon the jurisdiction of the federal courts were clearly made by Congress to apply to cases pending in State courts and not yet removed to the federal courts. Under the statutes referred to above, the removability of pending cases is specifically conditioned upon satisfaction of the jurisdictional requirements of the amending Act, i. e., it was only as to cases *commenced in the United States courts, whether originally or by removal,* that the new requirements did not apply. In ascertaining whether it is only as to such cases that Section 3 of Public Law 85–554 is intended to apply, certain principles may be helpful.

■■■ It is known that "the dominant note in the successive enactments of Congress relating to diversity jurisdiction is one of jealous restriction, of avoiding offense ·to state sensitiveness, and of relieving the federal courts of the overwhelming burden of 'business that intrinsically belongs to the state courts'

in order to keep them free for their distinctive federal business". City of Indianapolis v. Chase Nat. Bank of City of New York, 1941, 314 U.S. 63, 76, 62 S.Ct. 15, 20, 86 L.Ed. 47, rehearing denied 1941, 314 U.S. 714, 62 S.Ct. 355, 356, 86 L.Ed. 569. See, also, Shamrock Oil & Gas Corp. v. Sheets, 1941, 313 U.S. 100, 109, 61 S.Ct. 868, 872, 85 L.Ed. 1214, and Healy v. Ratta, 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248, wherein it was stated:

> "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined."

It has thus been held uniformly that the removal statutes are to be strictly construed and that removal should not be granted if there is doubt as to the right of removal in the first instance. Breymann v. Pennsylvania, O. & D. R. Co., 6 Cir., 1930, 38 F.2d 209; Winsor v. United Air Lines, D.C.D.Del.1958, 159 F.Supp. 856; Universal Surety Co. v. Manhattan Fire & Marine Ins. Co., D.C. D.S.D.1958, 157 F.Supp. 606; Walls v. City of New York, D.C.E.D.N.Y.1957, 156 F.Supp. 3; Maurer v. International Typographical Union, D.C.E.D.Pa.1956, 139 F.Supp. 337; Rodriguez v. Union Oil Co. of Cal., D.C.S.D.Cal.1954, 121 F. Supp. 824; Associated Tel. Co. v. Communication Workers of America, C.I.O., D.C.S.D.Cal.1953, 114 F.Supp. 334; Rice v. Sioux City Memorial Park Cemetery, D.C.N.D.Iowa 1952, 102 F.Supp. 658; Old Reading Brewery v. Lebanon Valley Brewing Co., D.C.M.D.Pa.1952, 102 F. Supp. 434; Babb v. Paul Revere Life Ins. Co., D.C.W.D.S.C.1952, 102 F.Supp. 247; Cudney v. Midcontinent Airlines, Inc., D.C.E.D.Mo.1951, 98 F.Supp. 403; John Hancock Mut. Life Ins. Co. v. United Office & Professional Workers of America, D.C.D.N.J.1950, 93 F.Supp. 296; Plant v. Harrison, C.C.S.D.N.Y. 1900, 101 F. 307.

■ Section 3 of the Act in question may properly be construed to exclude

from the application thereof only actions commenced *in the District Courts* prior to July 25, 1958. The provision follows immediately amendments to sections of the Judicial Code conferring *original* jurisdiction upon the District Courts. Section 5 of the Act, providing that a civil action in a State court arising under the workmen's compensation laws of such State may not be removed to any District Court, was added to the original bill (H.R. 11102) as an amendment on the floor of the House of Representatives. See 1958 U. S. Code Cong. and Admin. News, p. 2600. It is properly inferable that the lack of specificity of Section 3, in the context in which it is now placed, is the result of the draftsman's concern to save jurisdiction in cases commenced under the *original* jurisdiction of the District Courts, and hence, commenced in the District Courts. The fact that Rule 3 of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides that "a civil action is commenced by filing a complaint with the court" adds further basis for a belief that Section 3 of the Act is intended to refer only to cases already within the jurisdiction of the federal courts. If such is the case, Section 3 does not bar the application of Public Law 85–554 in the instant proceeding. It should be noted that it is not at all unusual for the Congress to use the term "commenced" to describe the institution in a federal court of a case which has been removed from a State court. The Acts of 1934 and 1937 referred to above did not apply to suits "commenced in the district courts, either originally or by removal".

■■ It being reasonable and permissible to construe Section 3 as barring the application of Public Law 85–554 only in the case of actions commenced in the District Courts whether by original jurisdiction or by removal, there is no other course than to hold that the Court has no jurisdiction in a diversity of citizenship case for an amount in controversy less than $10,000 which is removed from a State court subsequent to July 25, 1958. It has been stated that

"federal courts should guard with jealousy their doors when litigants seek to open them through removal procedures". Maurer v. International Typographical Union, supra, 139 F.Supp. 340. And "since want of federal jurisdiction would make futile the litigation of any of the issues in this court, every doubt should be resolved in favor of remand." Rodriguez v. Union Oil Co. of Cal., supra, 121 F.Supp. 828. I am not unmindful that an order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise. 28 U.S.C.A. § 1447(d). As stated by the Court of Appeals for the Sixth Circuit in Breymann v. Pennsylvania, O. & D. R. Co., supra, 38 F.2d at page 212:

"We are the more persuaded to the above conclusion [that the District Court erred in denying a motion to remand] by the fact that the final determination of the cause may perhaps be expedited by the granting of the motion to remand. No error can be predicated upon such action of the court * * *, while if jurisdiction be retained, error may be prosecuted upon the failure to remand and a final judgment may be reversed on this account. All doubt should therefore be resolved in favor of remand * * *"

See, also, John Hancock Mut. Life Ins. Co. v. United Office & Professional Workers of America, supra, 93 F.Supp 302, and American Fire & Casualty Co. v. Finn, 1951, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702, granting the motion of the defendant, who had removed the cause to the United States District Court, to vacate a judgment in favor of the plaintiff, who had unsuccessfully tried to have the cause remanded, on the ground that the federal court did not have original jurisdiction of the suit.

■ In the last analysis, to find jurisdiction here would mean to hold that an action is removable from a State court which could not have been originally instituted in this Court on the day it was

removed. I am aware of no precedent to sustain such a holding. Finding jurisdiction would mean further that many cases pending in State courts prior to July 25, 1958, which do not at this time involve an amount in controversy of even $3,000, might be removable at some indefinite future date when it appears that there is, in fact, a sum greater than that amount involved. See Sink v. Mutual Life Ins. Co. of New York, D.C.N.D.Ind. 1944, 56 F.Supp. 306. A much more specific indication than that appearing in Section 3 would have to be found before it could be said that Congress intended to upset the established principle that no civil action is subject to removal unless the action is one in which the federal court could have exercised original jurisdiction at the time of removal. See Metcalf v. City of Watertown, 1888, 128 U.S. 586, 9 S.Ct. 173, 32 L.Ed. 543.

In Lumbermen's Mutual Casualty Co. v. Elbert, 348 U.S. 48, 75 S.Ct. 151, 157, 99 L.Ed. 59, Mr. Justice Frankfurter, concurring, noted that "in New York, insurance companies run to cover in the federal courts and plaintiffs feel outraged by the process of attrition in enforcing their claims, due to a delay of from three to four years before a case can come to trial". This Court prefers to believe that this situation was, to some extent, in the minds of the framers of Public Law 85–554, for the Lumbermen's Mutual case is cited in the main text of the report, supra, upon which the Bill was recommended to the Congress, and that the instant decision accords with the Congressional intent in the enactment thereof. Certainly there is no warrant to believe that the Aetna Casualty and Surety Company need fear a "parochial prejudice" on the part of the citizens of the State of New York which might lead to its unjust treatment at their hands.

The motion to remand the cause to the City Court of the City of New York, County of Queens, will be granted. The attorney for the plaintiff will settle an order on notice.