**Romia PRITCHETT, on behalf of himself and others similarly situated, Plaintiff,**

v.

**OFFICE DEPOT, INC., Defendant.**

**No. 05–MK–392 (PAC).**

United States District Court, D. Colorado.

March 9, 2005.

Joseph J. Zonies, Kritzer/Zonies, LLC, Denver, CO, for Plaintiff.

Darren E. Nadel and Joshua B. Kirkpatrick, Littler Mendelson, P.C.–Colorado, Denver, CO, for Defendant.

## ORDER GRANTING MOTION TO REMAND

KRIEGER, District Judge.

**THIS MATTER** comes before the Court pursuant to Plaintiff's Motion to Remand and for Forthwith Action (# 3), and the Defendant's response (undocketed, filed March 7, 2005).[1]

The Plaintiff commenced this action in Colorado District Court for the County of Denver in April 2003. The action was certified as a class action in or about June 2004. *See docket # 61 in state court record.*

On February 18, 2005, Congress passed the Class Action Fairness Act, P.L. 109–2. Section 4 of that Act amended 28 U.S.C. § 1332 to create subject-matter jurisdiction in federal courts over class actions in which: (i) more than $ 5 million was in controversy; and (ii) any class member is diverse in citizenship from any defendant. *See* 28 U.S.C. § 1332(d)(2) (as amended). Section 5 of the Act created 28 U.S.C. § 1453, which allows for the removal of applicable class actions to federal court in accordance with 28 U.S.C. § 1446. Finally, Section 9 of the Act provides that "The amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act."

On March 1, 2005, the Defendant removed (# 1) the case to this Court, citing the newly amended 28 U.S.C. § 1453 and § 1446, on the grounds that this Court had subject-matter jurisdiction under the newly-expanded definition of diversity in 28 U.S.C. § 1332(d). The Plaintiff now moves to remand the action on the grounds that, under Section 9 of the Act, the amended provisions do not apply to this action because it had been "commenced" in state court prior to February 18, 2005. The Defendant responds that "commenced," for purposes of the Act, means the commencement of proceedings in federal court following removal, not the initial filing of the action in state court.

The federal courts have extensively addressed a similar issue on at least two occasions. In 1958, Congress raised the amount in controversy threshold of 28 U.S.C. § 1332(a) from $3,000 to $ 10,000, but provided that the modification would apply "only in the case of actions commenced after" the enactment of the statute on July 25, 1958. P.L. 85–554. Claiming to be the first court[2] to address the meaning of the term "commenced" in the context of the new statute was the Eastern District of New York in *Lorraine Motors, Inc. v. Aetna Cas. & Sur. Co.*, 166 F.Supp. 319 (E.D.N.Y.1958). The court there first turned its inquiry towards the Committee Reports accompanying the statute, but found no guidance. *Id.* at 321. However,

---

1. According to its caption, the Defendant's response is only to that portion of the Plaintiff's motion that requests a forthwith hearing. Further, the Defendant requests that the Court delay disposition of the Plaintiff's motion until the Defendant can fully brief the substantive issues. However, the Defendant's position on the relevant issue is sufficiently stated in its Notice of Removal, *see Docket # 1* at 5–6, and the Defendant has responded to the Plaintiff's arguments of Congressional intent. Moreover, the Court believes that the issues are adequately presented, and that de-

lay for additional briefing is not necessary. Thus, the Court will decide this matter as currently presented, in accordance with the final sentence of the first paragraph of D.C. Colo. L. Civ. R. 7.1(C).

2. The *Lorraine Motors* court considered itself to be deciding an issue of first impression. However, two weeks earlier, the District Court of Nebraska had decided *Lomax v. Duchow*, 163 F.Supp. 873 (D.Neb.1958), and concluded that the amendment did not apply to cases then-pending in state courts.

the court noted that the purpose of the law was to "ease the workload of our Federal courts by reducing the number of cases" falling within the grant of diversity jurisdiction. *Id.* The court then considered prior statutory amendments dating back to 1887, each of which narrowed federal jurisdiction in some respect, and each of which noted that its changes would not apply to cases "commenced" prior to the statutes' passage. *Id.* at 321–22. From its historical review, the court concluded that "previous limitations upon the jurisdiction of the federal courts were clearly made by Congress to apply to cases pending in State courts and not yet removed to the federal courts," and that such pending actions should be subject to the newer, narrow restrictions established by Congress during those cases' lifetimes. *Id.* at 322. Accordingly, the court concluded that the statute's exclusionary language applied only to "actions commenced in the District Courts prior to July 25, 1958," and that actions that had been commenced in state courts prior to that date were necessarily affected by the change. *Id.* at 322–23.

*Lorraine Motors,* however, was not the only case to consider the question. A few weeks after that decision was issued, the District Court for the District of Maryland reached the opposite result in *Kieffer v. Travelers Fire Ins. Co.,* 167 F.Supp. 398 (D.Md.1958). Despite expressly acknowledging the ruling in *Lorraine Motors,* the court in *Kieffer* observed that Congress had not used language it had used in the past, in which it specifically addressed the effect of its amendment on removable cases. *Id.* at 401. The Court also noted that Fed.R.Civ.P. 3 speaks of "commencement" of a case by the filing of a complaint, while Fed.R.Civ.P. 81(c), which ad-

dresses removed actions, never uses the word "commenced" or its variants to describe the removal of a case to federal court. *Id.* The court conceded that construing "commenced" to except pending state court cases from the higher jurisdictional requirement would somewhat subvert the intent of Congress to case burdens on federal courts, but noted that "the number of cases controlled by this point will necessarily be small [and t]he language of sec. 3 of P.L. 85–554 should be construed to mean what it says." *Id.* at 401.

As predicted by the court in *Kieffer,* the issue did indeed appear to affect a small number of cases. Indeed, relevant to the 1958 amendment to the diversity statute, the issue arose only once more, *Abernathy v. Consolidated Cab Co.,* 169 F.Supp. 831 (D.Kan.1959), and the District of Kansas followed *Lorraine Motors,* leaving two District Court decisions pointing in each direction: *Lorraine Motors* and *Abernathy* on one side, and *Lomax* and *Kieffer* on the other.

The issue arose again in 1988, when Congress again raised the amount in controversy limit from $ 10,000 to $ 50,000.[3] P.L. 100–702. Once again, that statute provided that it applied to cases "commenced" after its effective date, and once again, District Courts interpreting that statute came to conflicting conclusions. *Compare Hunt v. Transport Indem. Ins. Co.,* 1990 WL 192483 (D.Hawaii 1990) (unpublished), *Sayers v. Sears, Roebuck and Co.,* 732 F.Supp. 654 (W.D.Va.1990), *and Nolan v. Boeing Co.,* 715 F.Supp. 152 (E.D.La.1989) *with Rhinehart v. Cincinnati Incorporated,* 716 F.Supp. 7, 8 (E.D.Mich.1989). However, the clear

---

**3.** The amount in controversy requirement was again amended in 1996 to its present level of $ 75,000, in a statute that took effect on January 127, 1997. P.L. 104–317. However,

Congress did not limit the effect of this amendment to cases "commenced" after its effective date, and thus, the issue presented here did not arise.

trend of caselaw appeared to be drifting in favor of the *Lorraine Motors* conclusion. *Hunt* at, 1990 WL 192483, * 6. However, the courts adopting the *Lorraine Motors* approach appeared to place great weight on the logical deduction that because federal diversity jurisdiction must exist both at the time the action is initially filed in state court and at the time it is removed, "[i]t offends reason to suggest that diversity of citizenship must be present both at the time of the filing of the state action and the time of filing the removal petition but that the jurisdictional amount need be satisfied only when the state action is filed." *Sayers*, 732 F.Supp. at 656, *quoted in Hunt* at * 5.

■■■ As the foregoing clearly establishes, the definition of the word "commenced" when used in this statutory context is ambiguous, potentially referring to either the filing date of the action in state court, or the date that the case begins its life in federal court following removal. *United States v. Quarrell*, 310 F.3d 664, 669 (10th Cir.2002) (ambiguity occurs when statute is capable of being understood by reasonably well-informed persons in two or more different senses). When faced with an ambiguous statute, the Court should seek guidance from Congress' intent. *Id.; In re Geneva Steel Co.*, 281 F.3d 1173, 1178 (10th Cir.2002). In attempting to divine Congressional intent, the Court may turn to a variety of sources, including the statute's purpose, discussions in committee

reports, accepted and rejected amendments, and statements made in floor debates.[4] *See e.g. U.S. v. McNab*, 331 F.3d 1228, 1238 (11th Cir.2003).

The Congressional intent of the Class Action Fairness Act is expressed in its findings and purposes, contained in Section 2. As relevant here, the primary purpose of the Act is to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." P.L. 109–2, § 2(b)(2). This language indicates a general Congressional purpose of broadening access to the federal courts for certain class actions, and would weigh in favor of a reading of "commenced" that would permit removal.

However, the general statement of purpose in Section 2 of the Act does not address the more specific question of Congress' intent with regard to the effect of the Act on existing cases. The legislative history provides some evidence of a Congressional intent not to affect existing cases. There are no published committee reports for the Court to consult, but it is clear that supporters and opponents of the bill in both houses understood that the Act would not apply to pending cases. *See* 151 Cong. Rec. H741 (Feb. 17, 2005) (remarks of Rep. Udall) ("Unlike earlier versions, S. 5 would not have a retroactive effect, so it would not affect pending cases."); 151 Cong. Rec. H753 (Feb. 17, 2005) (remarks

---

4. The Court agrees with the Defendant's general concern, recited by the 10th Circuit, that casual statements by individual legislators may be poor indicia of Congressional intent, particularly where such comments are inconsistent with other, more reliable expressions of intent. *Colorado ex rel. Colorado State Banking Bd. v. Resolution Trust Corp.*, 926 F.2d 931, 940 (10th Cir.1991), *see also Roy v. County of Lexington*, 141 F.3d 533, 539 (4th Cir.1998). However, where multiple legislators offer the same understanding of a disput-

ed provision, and there is no other evidence of a contrary legislative intent, such statements may provide valuable guidance. *See e.g. U.S. v. O'Brien*, 391 U.S. 367, 383–84, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) ("When the issue is simply the interpretation of legislation, the Court will look to statements by legislators for guidance as to the purpose of the legislature, because the benefit to sound decision-making in this circumstance is thought sufficient to risk the possibility of misreading Congress' purpose.").

of Rep. Goodlatte); 151 Cong. Rec. S1080 (Feb. 8, 2005) (remarks of Sen. Dodd); 151 Cong. Rec. S1087 (Feb. 8, 2005) (remarks of Sen. Kennedy). The Court has reviewed the entire reported Congressional colloquy concerning the Act and located no specific statement of contrary intent by any legislator evincing an intention that the Act permit removal of presently-pending cases. Accordingly, the Court finds that the intent of Congress with regard to the specific question of whether the Act applies to cases then-pending in state court to be answered in the negative.

There are several additional reasons that compel the Court's result here. First, the Court finds that such a conclusion gives the most natural reading to the plain meaning of the term "commenced." As discussed in the *Kieffer* line of cases, the most common definition of word "commenced" refers to the beginning of an undertaking. This is the manner in which Fed.R.Civ.P. 3 uses the word, defining that "a civil action is commenced by filing of a complaint with the court." To read the word "commenced" in the context of the Act to refer to the filing of a Notice of Removal would require a strained reading of the word in both the colloquial and legal sense.

Second, the Court notes that although *Lorraine Motors* may reflect the general trend of authority with regard to the interpretation of the word "commenced" when Congress adjusts the amount in controversy requirement of 28 U.S.C. § 1332, the reasoning of that line of cases is not helpful in this circumstance. A central theme underlying that line of reasoning is that the increase in the jurisdiction threshold

represented a Congressional intent to successively restrict the scope of federal jurisdiction. Consequently, it was reasonable for these courts to interpret the term "commenced" in such a way as to give effect to that Congressional intent. Here, the general purpose of the Act is to *broaden* federal jurisdiction in class actions. The rationale giving effect to a Congressional intent to *limit* federal jurisdiction is thus not applicable.[5] Even if the Court were inclined to adopt the *Lorraine Motors* rationale, it would do so mindful of the conclusion reached in *Sayers:* that it "offends reason" to permit the removal of a case where the current requirements of diversity jurisdiction were not present at the time the case was first filed in state court. Here, the Court assumes that the action was not removable under then-existing law when it was first filed in April 2003, and thus, permitting it to be removed now would result in precisely the offense to reason that *Sayers* and *Hunt* rely on *Lorraine Motors* to avoid.

■ Finally, the Court notes that reading the statute in the manner urged by the Defendant would have undesirable and unintended consequences. It would permit the removal of nearly every presently-pending class action in every state court, resulting in a sudden tidal wave of filings on an already burdened federal judiciary, rather than the gradual, incremental flow of newly-filed class actions that would result from a purely prospective application of the Act. Such a reading would also deem certain substantive provisions of the Act to apply to presently-pending cases, potentially frustrating the expectations of current litigants. For example, Section 3 of

---

**5.** The Court is also aware of the apparent paradox created by finding Congress intended the Act to broaden federal jurisdiction and yet simultaneously rejecting the rationale of *Lorraine Motors* which would result in an interpretation of the word "commenced" that would result in a broadened jurisdiction. However, that paradox vanishes once one recognizes that although Congress generally intended the Act to broaden federal jurisdiction, it also maintained a specific intention to apply the Act only prospectively.

the Act creates new, substantive restrictions on the approval of "coupon settlements," in which class-action plaintiffs receive coupons instead of cash. *See* 28 U.S.C. § 1712. If the Court were to construe the Act to apply to cases then-pending in state courts and removed to federal court, these limitations on coupon settlements would also apply to those cases. Applying new restrictions would frustrate the expectations of parties who might have litigated these suits to near-conclusion, only to find that a negotiated settlement that awaited judicial approval was stymied by the Act. Insofar as retroactive application of the Act might be read to impair such settled expectations, the Court will indulge a presumption against retroactivity absent a clear Congressional intent to the contrary. *See e.g. Landgraf v. USI Film Products, Inc.*, 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). This ruling also gives effect to the well-settled principle that statutes conferring jurisdiction on federal courts are to be strictly construed, and doubts resolved against federal jurisdiction. *U.S. ex rel. King v. Hillcrest Health Center*, 264 F.3d 1271, 1280 (10th Cir.2001). Although the Act is unusual in that it seeks to broaden federal jurisdiction in certain specified circumstances, it does not purport to abrogate this long-standing rule.

■ Accordingly, this Court determines that the term "commenced" in Section 9 of the Act refers to the date the action was first filed in a court of proper jurisdiction, not the date that it was removed to federal court. Consequently, the Act does not apply to cases, such as this one, commenced prior to February 18, 2005.[6] There is no suggestion that the Court otherwise has subject matter jurisdiction over this action, and thus, the Plaintiff's Motion to Remand (# 3) is **GRANTED**. The case is remanded to the Colorado District Court for the County of Denver, and the Clerk of the Court is directed to transmit the complete case file to the clerk of that court. The Clerk of the Court will then close this case.

---

6. Although a finding that the Act does not apply to this case would arguably also prevent the Defendant from invoking the limited right to seek appeal of a remand order contained within the Act, *see* 28 U.S.C. § 1453(c), that question is not presented in the parties' briefing and thus, the Court expresses no opinion on it.