**Romia PRITCHETT, on behalf of himself and all other individuals similarly situated, Respondent,**

v.

**OFFICE DEPOT, INC., Petitioner.**

No. 05–0501.

United States Court of Appeals, Tenth Circuit.

Aug. 18, 2005.

Darren E. Nadel, Joshua B. Kirkpatrick, John A. Ybarra, and Allan G. King, Littler Mendelson, P.C., Denver, CO, for Petitioner.

Joseph J. Zonies, Kritzer/Zonies LLC, Denver, CO, for Respondent.

Before EBEL, O'BRIEN and McCONNELL, Circuit Judges.

EBEL, Circuit Judge.

This case presents a question of first impression: Whether the removal provisions of the Class Action Fairness Act of 2005, Pub.L. No. 109–2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.) (hereinafter "Class Action Fairness Act" or "the Act"), apply to pending state court cases that were removed after the effective date of the Act. On March 18, 2005, we entered an order in this case holding that the Act does not apply to pending state cases and denying Defendant's Petition for Leave to Appeal for lack of subject matter jurisdiction. We now issue this opinion explaining the reasoning for that order.

## I. Background

On April 2, 2003, Plaintiff Romia Pritchett, acting on behalf of himself and all others similarly situated, filed a class action complaint against Defendant Office Depot, Inc. in the Colorado District Court for the County of Denver. Plaintiff, an assistant store manager at an Office Depot retail store, alleged that Defendant violated Colorado law by regularly requiring its employees to work extra hours without paying overtime. On June 21, 2004, the state court certified a class pursuant to Rule 23 of the Colorado Rules of Civil Procedure consisting of "[a]ll Assistant Store Managers employed by Office Depot, Inc. in the State of Colorado from April 2, 2000." Trial was set for March 14, 2005 and discovery commenced.

Approximately one month before the start of trial, on February 18, 2005, Congress enacted the Class Action Fairness Act. 119 Stat. at 4. One of the most significant features of the new law was that it expanded the subject matter jurisdiction of federal courts over class actions in which at least one plaintiff class member was diverse in citizenship from the defendant and where the amount in controversy exceeded $5 million. *See* § 4, 119 Stat. at 9–12 (codified at 28 U.S.C. § 1332(d)). If such an action arose in state court, Section 5 of the Act permitted removal to federal court in accordance with 28 U.S.C. § 1446. § 5, 119 Stat. at 12–13 (codified at 28 U.S.C. § 1453).

On March 1, 2005, just two weeks before trial was scheduled to begin, Defendant removed this action to the United States District Court for the District of Colorado, utilizing the newly-enacted provisions in 28 U.S.C. §§ 1332(d) and 1453 as a basis for jurisdiction. On March 7, 2005, Plaintiff moved to remand the proceedings to state court pursuant to 28 U.S.C. § 1447, arguing that the Class Action Fairness Act of 2005 did not apply to actions already pending in state courts. The district court agreed, and on March 9, 2005, remanded the case to the state court.

On March 10, 2005, with trial only four days away, Defendant requested a stay in proceedings from the state court so that it could appeal the district court's remand order. The state court denied the request and instead delayed the start date of the trial one week, to March 21, 2005.

On March 14, 2005, Defendant filed a petition for leave to appeal the district court's remand order with this court and also filed a motion for an emergency stay of the state court proceedings pending appeal. On March 18, 2005, we denied the petition for leave to appeal for lack of subject matter jurisdiction in a brief order and indicated that further elaboration would follow.[1] That order also dismissed the motion for an emergency stay as moot. We now issue this opinion to explain the court's reasoning in the aforementioned order.

## II. Jurisdiction

■ Defendant filed its petition for leave to appeal under 28 U.S.C. § 1453(c), which was recently enacted as part of the Class Action Fairness Act of 2005. § 5, 119 Stat. at 12. Section 1453(c) is a provision that expressly gives the United States courts of appeals discretionary jurisdiction to consider appeals of remand orders in certain class action cases specified in the Act, provided that the appeal is taken within seven days of the remand order. 28 U.S.C. § 1453(c)(1).[2] If a court of appeals accepts an appeal under subsection (c)(1), the appellate court is given sixty additional days during which to render its judgment. 28 U.S.C. § 1453(c)(2).

■ Here, the petition for leave to appeal was filed well within the seven-day time limit, and jurisdiction vested in the Tenth Circuit Court of Appeals at that time. Although we ultimately conclude that we do not have jurisdiction over this appeal predicated on the Class Action Fairness Act because this action was commenced prior to the effective date of the Act, federal courts always have jurisdiction to consider their own jurisdiction. *Combs*

---

1. In the order, we stated that Defendant's petition for leave to appeal arose under "28 U.S.C. 31453(c)." The statutory citation should have read "28 U.S.C. § 1453(c)."

2. In actuality, 28 U.S.C. § 1453(c) reads as follows:

   [A] court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed if application is made to the court of appeals *not less than* 7 days after entry of the order.

   *Id.* (emphasis added). Read literally, this provision seems to say that the appeal from an order granting or denying remand *cannot* be taken within seven days of the order. Once that period passes, however, the statute would permit an appeal to our court at any time thereafter.

   We believe this to be a typographical error. The statute should read that an appeal is permissible if filed "not more than" seven days after entry of the remand order. As noted in the Senate Report accompanying the Act, "New subsection 1453(c) provides discretionary appellate review of remand orders under this legislation but also imposes time limits. Specifically, parties must file a notice of appeal *within* seven days after entry of a remand order." S.Rep. No. 109–14, at 49 (Feb. 28, 2005), U.S.Code Cong. & Admin.News 2005, pp. 3, 46 (emphasis added). Prior to the enactment of 28 U.S.C. § 1453(c), appeals from remand orders were only permitted in very limited circumstances. *See* 28 U.S.C. §§ 1443, 1447. Given Congress' stated intent to impose time limits on appeals of class action remand orders and the limited availability of appeals prior to the statute's enactment, we can think of no plausible reason why the text of Act would instead impose a seven-day waiting period followed by a limitless window for appeal. This, therefore, is one of the rare cases in which a "literal application of the statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enters.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

   We also note that a prior published version of this opinion overlooked the statutory drafting error in § 1453(c), and we are grateful to Professor Georgene M. Vairo for bringing it to our attention. *See* Georgene M. Vairo, *Class Action Fairness*, National Law Journal, June 27, 2005, at 12.

*v. PriceWaterhouse Coopers LLP,* 382 F.3d 1196, 1204 (10th Cir.2004). Thus, we have jurisdiction to consider our jurisdiction to grant the requested relief in the instant case.

### III. Effective date of 28 U.S.C. § 1332(d)

■ Section 9 of the Act provides that:

The amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act.

119 Stat. at 14. The date of enactment of the Act is February 18, 2005. *Id.* at 4. This class action began on April 2, 2003 when Plaintiff filed his class action complaint with the Colorado District Court. Defendant removed the case to federal court on March 1, 2005. Thus, the applicability of the Act turns upon whether this civil action was "commenced" on April 2, 2003 (the state court filing date), or on March 1, 2005 (the federal court removal date).

Defendant claims that the case was commenced for purposes of the Act when it was removed to federal court. In essence, Defendant argues that when a preexisting state action is removed to federal court, it is "commenced" in federal court as of the date of removal. Plaintiff argues that the class action commenced just once, when it was initially filed in state court on April 2, 2003. Because that date precedes the effective date of the statute, according to Plaintiff, this case is not governed by the Act. We agree with Plaintiff's reading of the word "commenced."

■ Our analysis is governed by traditional rules of statutory construction and rules pertaining to federal jurisdiction. Therefore, we look first to the language of the statute, which reads as follows:

The amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act.

§ 9, 119 Stat. at 14. Traditionally, a cause of action is commenced when it is first brought in an appropriate court, which here was when it was brought in state court. *See* Fed.R.Civ.P. 3 ("A civil action is commenced by filing a complaint with the court."). When a matter is removed to federal court, it is not traditionally viewed as recommenced, nor as a new cause of action. *See Kieffer v. Travelers Fire Ins. Co.,* 167 F.Supp. 398, 401 (D.Md.1958) ("[W]e do not usually think of an action as having been commenced in a district court by removal."); 14B Charles A. Wright, Arther R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3721, at 302 (3d ed.1998) (noting that removal jurisdiction is unique because it allows a federal court to hear a claim over which it has no original subject matter jurisdiction and therefore to adjudicate a suit that could never have been "commenced" there). Although there exist some unique circumstances in which some action other than filing a complaint in court is deemed to "commence" a lawsuit, *see, e.g., Meisel v. Fed. Bureau of Investigation,* 204 F.Supp.2d 684, 687–88 (S.D.N.Y.2002) (holding that action under the Administrative Procedure Act may be commenced by filing a miscellaneous discovery motion), we view these situations as exceptions to the general federal rule that a lawsuit is commenced at a discrete moment in time: the filing of the original complaint in a court of competent jurisdiction. *See* Fed. R.Civ.P. 3. Of course, some states provide that service of process may commence a suit. *See, e.g.,* Conn. Gen.Stat. § 52–45a (2003).

■ We then look to presumptions that might aid our analysis. It is well-established that statutes conferring jurisdiction upon the federal courts, and partic-

ularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–109, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *United States ex rel. King v. Hillcrest Health Ctr.*, 264 F.3d 1271, 1280 (10th Cir.2001). Thus, if there is ambiguity as to whether the instant statute confers federal jurisdiction over this case, we are compelled to adopt a reasonable, narrow construction. Here, we find Plaintiff's interpretation of the word "commenced" in the Act to be such a construction.[3]

Finally, we turn to legislative history. Although legislative history is sometimes suspect as a persuasive interpretative tool, here the progression of language in the Act as it moved through Congress is instructive. When the Act was originally introduced in the House, the removal provision applied both to cases "commenced" on or after the enactment date and to cases in which a class certification order is entered on or after the enactment date. *See* H.R. 516, 109th Cong. § 7 (2005). In contrast, neither the Senate version of the bill nor the final statute passed by both houses of Congress provided for removal of actions certified on or after the enactment date. *See* S. 5, 109th Cong. § 9 (2005); § 9, 119 Stat. at 14. The Senate version and the final statute provided only for application of the Class Action Fairness Act to civil actions "commenced" on or after the date of the Act. S. 5; § 9, 110 Stat. at 14. It is thus clear that Congress initially started out with broader language that could have included a number of then-pending lawsuits in state courts. By excising the House provision, Congress signaled an intent to narrow the removal provisions of the Act to exclude currently pending suits.[4]

Further, we note that the Congressional Record contains two statements from

---

**3.** We also note that courts apply a presumption against the retroactivity of a statute absent a clear congressional intent to the contrary. *Landgraf v. USI Film Prods., Inc.*, 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). However, here, Defendant is not arguing for retroactivity in the true sense of the word, where the events giving rise to liability occurred prior to the enactment of a statute. *See id.* Rather, Defendant argues that the operative act, removal, occurred after the effective date of the statute and therefore that the statute applies prospectively. Since Defendant is not raising a traditional retroactivity argument, we will not engage in a *Landgraf* analysis.

**4.** Both sides have tried to draw support for their positions by comparing the language in the Act to comparable language in earlier amendments to the federal diversity statutes where Congress pegged the effective date provision to commencement *or removal* of an action. However, we do not find those statutes particularly helpful here because the language in those earlier statutes cuts both ways. For example, when Congress increased the amount-in-controversy requirement for diversity jurisdiction from $500 to $2,000, it pro-

vided that the new law would not "affect the jurisdiction over or disposition of any suit *removed from* the court of any State, or suit *commenced in* any court of the United States, before the passage hereof...." Act of Aug. 13, 1888, ch. 866, 25 Stat. 433, 437 (emphasis added). Similarly, Sections 202(b) and 203(b) of the Judicial Improvements and Access to Justice Act, Pub.L. No. 100–702, 102 Stat. 4642 (1988), which deal with citizenship for diversity purposes of multinational corporations, representative parties, and resident aliens, each contain effective date provisions applying that act to any "civil action commenced in or removed to" to federal court.

One could argue that because Congress refers only to commencement of a suit in some effective date provisions and to commencement *or removal* in others, the two terms are not synonymous. On the other hand, the statutes that refer both to commencement and removal limit the "commencement" event to commencement of an action *in the federal court*, which could not be construed to include commencement in a state court. Hence, one could argue that Congress in those statutes needed to add another jurisdic-

sponsoring legislators indicating that the bill was not designed to apply to currently pending lawsuits. *See* 151 Cong. Rec. S1080 (daily ed. Feb. 8, 2005) (statement of Sen. Dodd) ("[The Act] does not apply retroactively, despite those who wanted it to. A case filed before the date of enactment will be unaffected by any provision of this legislation."); 151 Cong. Rec. H753 (daily ed. Feb. 17, 2005) (statement of Rep. Goodlatte) ("Since the legislation is not retroactive, it would have absolutely no effect on the 75 class actions already filed against Merck in the wake of the Vioxx withdrawal.").[5] Ordinarily, individual floor statements are entitled to little weight, but here, where they are consistent with and cast light upon the meaning of a specific change in the language between an earlier version of the bill and the final Act, the statements confirm our construction of the Act.

## IV. Prior precedent

Defendant argues that there are several district court opinions that adopt its broad-

tionally triggering event—removal to federal court—that was not necessary here, where the triggering event is the more general language of commencement of "any civil action." This more general language is arguably broad enough to include actions commenced in state court. Because the language from analogous earlier statutes could plausibly support both Plaintiff's and Defendant's positions, its relevance to our analysis is substantially marginalized.

5. Plaintiff also points to similar statements made by Senator Kennedy and Representative Udall. *See* 151 Cong. Rec. S1087 (daily ed. Feb. 8, 2005) (statement of Sen. Kennedy); 151 Cong. Rec. H741 (daily ed. Feb. 17, 2005) (statement of Rep. Udall). However, since neither of these congressmen sponsored the legislation and both voted against it, we see little persuasive value in their comments.

6. In both *Hunt* and *Lorraine Motors*, the plaintiffs filed their state court suits prior to

er view of commencement. *See Lorraine Motors, Inc. v. Aetna Cas. & Sur. Co.*, 166 F.Supp. 319, 323–24 (E.D.N.Y.1958) (holding that an action is "commenced" on the removal date for purposes of applying a higher amount-in-controversy requirement); *Hunt v. Transport Indem. Ins. Co.*, No. 90–00041, 1990 WL 192483, *5–6 (D.Haw. July 30, 1990) (unpublished) (same).[6]

Neither of these cases deal directly with the statute in question, which was passed only several weeks ago. Thus, the cases are relevant only by analogy. Even then, their persuasive value is diluted, as Plaintiff points out, by the presence of contemporaneous contrary authority from other federal district courts. *See Kieffer*, 167 F.Supp. at 402 (holding that action is "commenced" on initial filing date in state court and declining to impose higher amount-in-controversy requirement imposed prior to removal); *Rhinehart v. Cincinnati, Inc.*, 716 F.Supp. 7, 8 (E.D.Mich. 1989) (same).

■■■ Moreover, the courts' reasoning in *Lorraine Motors* and *Hunt* actually sup-

Congress' decision to raise the amount-in-controversy requirement of § 1332. *Lorraine Motors*, 166 F.Supp. at 320; *Hunt*, 1990 WL 192483, at *1. At the time of the initial state filing, each suit would have satisfied the lower federal amount-in-controversy requirement. *Id.* However, the defendants in these cases attempted to remove the actions only after Congress had amended the diversity statute, and neither suit satisfied the new amount in controversy requirement, which was applicable only to cases "commenced" after the effective date of the statute. *Id.*

Both courts remanded the cases to state court, and held that the actions were "commenced" for purposes of applying the new amount-in-controversy requirement upon filing of the removal petition, not upon the filing of the initial complaint in state court. *Lorraine Motors*, 166 F.Supp. at 324; *Hunt*, 1990 WL 192483, at *6.

ports Plaintiff's interpretation of the term "commenced." Although the courts were interpreting statutory language that is identical to the disputed provision in the instant case, there is a major difference between a statute that defines additional circumstances in which diversity of citizenship exists (such as the Class Action Fairness Act) and a statute that increases the amount-in-controversy requirement. The latter attempts to restrict federal court jurisdiction, while the former attempts to expand it. Both *Hunt* and *Lorraine Motors* rely heavily upon the principle that removal statutes are to be strictly construed, with all doubts resolved against removal. *Lorraine Motors,* 166 F.Supp. at 324; *Hunt,* 1990 WL 192483, at *6. Thus, in those cases, interpreting the term "commenced" as referring to the filing of the removal petition would serve that aim by restricting the number of preexisting state claims that could be removed. In contrast, such an interpretation here would actually permit broader federal court jurisdiction by increasing the number of removable actions.[7] Given this, we remain convinced that term "commenced" in the Act refers to the initial filing, not the removal date.

## V. Public Policy

■ Where the language of a statute is arguably ambiguous, courts also look to public policy considerations to cast further elucidation on Congress' likely intent. *United States v. LaHue,* 170 F.3d 1026, 1028 (10th Cir.1999). Here, we are mind-

ful of the fact that Defendant's argument, if accepted, could have serious consequences for both the federal judiciary and our colleagues on the state bench. Permitting the Act to apply to currently pending state suits would, in the words of the chairman of the Senate Judiciary Committee, "be extraordinarily disruptive of many State court proceedings." 151 Cong. Rec. S1225 (daily ed. Feb. 10, 2005) (statement of Sen. Specter).

As the facts of this case demonstrate, Defendant's interpretation of the Act would allow cases to be plucked from state court on the eve of trial. Such practices are disruptive to federal-state comity and the settled expectations of the litigants. Permitting removal of this case would effectively apply new rules to a game in the final minutes of the last quarter, and we find it ironic that Defendant seeks countenance for its position from a statute that was designed, in the first place, to curtail jurisdictional gaming and forum-shopping. S.Rep. No. 109–14, at 4–5, U.S.Code Cong. & Admin.News 2005, at 5–6. The consequences of Defendant's argument are sufficiently dramatic that we are not eager to ascribe those motivations to Congress without a clearer expression than we find here.

## VI. Conclusion

■ Because we conclude that removal to federal court does not "commence" an action for the purposes of the Class Action Fairness Act of 2005, Defendant's Petition

7. We are mindful of the fact that Congress' goal in passing this legislation was to increase access to federal courts, and we also recognize that the Senate report instructs us to construe the bill's terms broadly. S.Rep. No. 109–14, at 43 (Feb. 28, 2005), U.S.Code Cong. & Admin.News 2005, at 41. But these general sentiments do not provide *carte blanche* for

federal jurisdiction over a state class action any time the statute is ambiguous. While it is clear the Congress wished to expand federal jurisdiction, when that expansion is made effective is what is at issue in this case, and that is an issue we approach cautiously. *See Shamrock Oil & Gas Corp.,* 313 U.S. at 108–109, 61 S.Ct. 868.

for Leave to Appeal is DENIED.[8]

8. Accordingly, Defendant's motion for emergency stay pending appeal is DENIED as moot.