Michelle L. PLUMMER, individually and on behalf of all others similarly situated, Plaintiff,

v.

(1) FARMERS GROUP, INC., (2) Farmers Insurance Company, Inc., and (3) Farmers Insurance Exchange, Defendants.

No. CIV–05–242–WH.

United States District Court, E.D. Oklahoma.

Sept. 15, 2005.

Reggie N. Whitten, Jason E. Roselius, Derrick L. Morton, Oklahoma City, OK, Michael Burrage, David A. Burrage, Heather H. Burrage, Burrage Law Firm, Durant, OK, for Plaintiff.

Timila S. Rother, Rustin J. Strubhar, Richard C. Ford, Alison M. Howard, Crowe & Dunlevy, Michael S. Ryan, Edmonds, Cole, Hargrave, Givens, Ryan & Woodson, Oklahoma City, OK, for Defendants.

## ORDER

WHITE, District Judge.

Before the Court is Plaintiff's Motion to Remand and Brief in Support [Docket No. 11] which was filed on July 7, 2005. The Plaintiff contends that jurisdiction pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act ("CAFA"), does not exist because this case was commenced in state court prior to the enactment of CAFA and CAFA is not retroactive. Furthermore, the Plaintiff argues that the changes made by the Amended Petition cause it to relate back to the filing date of the Original Petition pursuant to Fed.R.Civ.P. 15(c). Finally, the Plaintiff contends that the Defendants have failed to establish that the amount in controversy exceeds the jurisdictional amount of $5,000,000.

The Defendants timely filed their Objection to Plaintiff's Motion to Remand and Brief in Support [Docket No. 15] on August 3, 2005.[1] The Defendants contend that the Plaintiff's decision to amend the petition by adding new parties, not to mention the new claims and request for certification of the case as a class action, was tantamount to commencing a new cause of action. Additionally, the Defendants maintain that they have met the amount in controversy requirement. For the following reasons the Plaintiff's Motion is denied.

## BACKGROUND

The Plaintiff initiated her cause of action against the Defendants on August 15, 2003. The Original Petition consisted of a single plaintiff, presenting a single cause of action[2]—material breach of contract—against three separate legal entities.

According to the Original Petition, on October 7, 2002, the Plaintiff purchased an insurance policy from the Defendants. The policy insured the Plaintiff's vehicle against loss from automobile collision. On July 14, 2003, while covered by the policy, the Plaintiff and three children were involved in an automobile accident in Durant, Oklahoma. The collision was caused by an uninsured and intoxicated driver. Plaintiff notified Defendants of the accident and requested that her claim be handled under her policy. Pursuant to the policy, the Defendants adjusted the claim. In adjusting Plaintiff's claim the Defendants utilized a computer program known as CCC to determine the value of the Plaintiff's automobile. The Plaintiff alleges that CCC under-valued the Plaintiff's automobile, leading to an unreasonably low evaluation of the total loss.

At the time the case was originally filed it was not removable pursuant to 28 U.S.C. § 1446. On August 5, 2004, almost one year later and after some discovery, the Plaintiff filed a motion to amend the petition. On February 18, 2005, CAFA was enacted. CAFA extends the limited jurisdiction of the federal courts to include many class action lawsuits in which the amount in controversy is over $5,000,000 and the parties are sufficiently diverse. On March 23, 2005, the state court granted the Plaintiff's motion to amend. On May 23, 2005, the Plaintiff filed an Amended Petition in state court. The Amended Petition claims that the CCC computer program potentially undervalued thousands of

---

1. On July 14, 2005, the Defendants moved the Court for an extension of time to file their response. The Motion was granted by the Court.

2. The Supreme Court has described the concept of a cause of action as "outmoded" under modern practice. *See Aldinger v. Howard,* 427 U.S. 1, 9, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). The phrase continues to be used by federal and state courts, however, and this Court continues the tradition.

automobile values of thousands of additional claimants. The Amended Petition added: (1) thousands of new parties to the suit (all plaintiffs); (2) a fraud cause of action; (3) a bad faith cause of action; and (4) a request for certification of the matter as a class action pursuant to 12 Okla.Stat. § 2023. Shortly thereafter, the Defendants timely removed the case to this Court.

## ANALYSIS

### I. Commencement of the Action

The Plaintiff spent many pages within her Opening Brief and Reply Brief arguing that CAFA is not retroactive. The Defendants spent many pages presenting the purpose of CAFA and arguing that this action falls within the express purpose of the legislation. Neither argument appears to be contested. The provisions of § 9 of CAFA provide that "[CAFA] shall apply to any civil action commenced on or after the date of enactment of [CAFA]." Also, no doubt exists that the purpose of CAFA is to extend federal jurisdiction for cases such as the present—i.e. nationwide class action cases. This fact does not, however, eliminate the necessity to follow § 9 of CAFA. The Court appreciates such thorough analysis from the parties, but finds that the excessive verbiage regarding uncontested matters only complicates a rather straightforward issue. The issue is whether the addition of new claims and new plaintiffs constitutes a *de facto* and *de jure* commencement of a new action.

This exact issue has not been before the Tenth Circuit or any other court. The Plaintiff seems to believe that *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090 (10th Cir.2005), is dispositive.[3] In *Pritchett*, an employee of the defendant, acting on behalf of himself and all others similarly situated, filed a class action complaint against the defendant on April 2, 2003. Prior to the trial of the class action in state court, Congress enacted CAFA. The defendant attempted to remove the class action shortly thereafter. Prior to publishing this decision the Tenth Circuit "entered an order in this case holding that [CAFA] does not apply to pending state cases." *Pritchett*, at 1233. The *Pritchett* decision was issued to explain the court's ruling in the previous order. The *Pritchett* decision recognizes that, while "some unique circumstances [exist] in which some action other than filing a complaint in court is deemed to commence a lawsuit," "[t]raditionally a cause of action is commenced when it is first brought in an appropriate court...." *Id.* at 1234(citation omitted). The Tenth Circuit concluded "that removal to federal court does not 'commence' an action for the purposes of [CAFA]." *Id*, at 1238. The Court agrees wholeheartedly with the decision in *Pritchett*, but finds that the present case is substantially different.

The Defendants in the present case are not arguing that removal constitutes a new commencement date. Instead, they are contending that the filing date of the Amended Petition constitutes a new commencement date. Additionally, a proposed class action was not presented in the present case until after the passage of CAFA. Prior to May 23, 2005 the case involved one claim, one theory of recovery, and one Oklahoma plaintiff. After that date, it was a three count case with several theories of recovery asserted by thousands of potential plaintiffs spanning the United States. The *Pritchett* court was not faced with determining whether drastic modification

---

3. The actual *Pritchett* decision cited by the Plaintiff was *Pritchett v. Office Depot, Inc.*, 404 F.3d 1232 (10th Cir.2005); however, that case has been superceded or amended. The

changes appear to be immaterial to this case; however, the Court will reference the most recent case.

to a petition by way of amendment which initiates a class action fell within the category of "unique circumstance in which some action other than filing a complaint in court is deemed to commence a lawsuit." *Id.* at 1234(citation omitted).

A related issue was touched on in *Desmond v. BankAmerica Corp., et al.*, 120 F.Supp.2d 1201 (N.D.Cal.2000). In *Desmond* the defendants removed securities class actions (a total of five cases were removed and consolidated) pursuant to the Securities Litigation Uniform Standards Act ("SLUSA"). Just as in the present case, those cases were actually commenced in state court prior to the effective date of SLUSA. In addition, SLUSA and CAFA have remarkably similar retroactivity clauses. The SLUSA retroactivity clause (or more accurately, nonretroactivity clause) provides that SLUSA "shall not affect or apply to any action commenced before and pending on the date of enactment." Pub.L. 105–353 § 101(c). The defendant argued in *Desmond* that the proposed addition of nonparties after the effective date of SLUSA constituted a de facto commencement of a new action. The *Desmond* court ultimately declined to address this issue; however, the decision suggests that the filing of an amended complaint or any other mechanism, "such as a class certification order," would give the defendant a thirty day window for removal pursuant to 28 U.S.C. § 1446(b).

In addition to the *Desmond* case, several other cases acknowledge that the filing of an amended petition or complaint may establish a new cause of action. *Cf. Duplan*

*v. Harper*, 188 F.3d 1195, 1199, 1200 (10th Cir.1999); *Hyatt v. United States*, 968 F.Supp. 96, 99–100 (E.D.N.Y.1997)(recognizing that an amended petition could be sufficient to instigate a new cause of action); *Ellis v. Hanson Natural Resources Co.*, 857 F.Supp. 766 (D.Or.1994), *aff'd*, 70 F.3d 1278, 1995 WL 710508 (9th Cir.1995). Therefore, there is a significant body of law that suggests that an amended complaint or petition is tantamount to commencing a new cause of action in certain circumstances. Furthermore, the language of the Federal Rules of Civil Procedure also suggests that the Amended Petition is equivalent to a new cause of action with a new commencement date.

"A civil action is commenced by filing a complaint with the court." Fed.R.Civ.P. 3. The filing of an amended complaint may constitute the commencement of a new action, unless the amended complaint "relates back" pursuant to Fed.R.Civ.P. 15(c).[4] In the event that a proposed amendment would add a new defendant, Rule 15(c)(3) requires the plaintiff to establish three requirements: (1) the claim being asserted against the new defendant must arise out of the same conduct, transaction, or occurrence set forth in the original pleading; (2) the new defendant must receive timely notice of the claims in the original pleading, so that the new defendant is not prejudiced; and (3) the new defendant knew or should have known that "but for a mistake concerning the identity of the proper party" it should have been named in the original pleading. *Olech v. Village of Willowbrook*, 138 F.Supp.2d

---

4. Although the intended purpose of Rule 15(c) is to determine whether an additional claim or added party sufficiently relates back to the original petition in order to determine the filing date for statute of limitations purposes, the approach used by Rule 15(c) to determine relation back is a good model to use in determining whether an amended petition constitutes a new commencement date. *See Knudsen v. Liberty Mutual Ins. Co.*, 411 F.3d 805, 807 (7th Cir.2005). Should state law be the appropriate consideration, the Oklahoma Supreme Court has adopted the federal courts' construction of Rule 15(c), which is identical to 12 Okla.Stat. § 2015(c). *Dotson v. Rainbolt*, 894 P.2d 1109, 1113 (Okla.1995).

1036, 1041 (N.D.Ill.2000). The express terms of Rule 15(c)(3) do not speak directly to the situation here because the Plaintiff in the present case is attempting to add new plaintiffs not defendants.[5] The Advisory Committee Notes provide some guidance, though the provided guidance is somewhat ambiguous.

The Advisory Committee Notes to the 1966 Amendment state that "the *attitude* taken in revised Rule 15(c) toward change of defendants extends *by analogy* to amendments changing plaintiff." (emphasis added). "Despite this guidance, courts have been divided on precisely how to apply the 'attitude' of Rule 15(c) to motions to add plaintiffs to the case." *Id.* at 1042. "Some courts apply all of the literal requirements of Rule 15(c)." *Id.; See also Levy v. U.S. General Accounting Office*, 1998 WL 193191 (S.D.N.Y.); *Nelson v. County of Allegheny*, 60 F.3d 1010, 1013–15 (3rd Cir.1995). Thus, the plaintiff must show that the failure to add the new plaintiff earlier was due to a mistake. Other courts, however, "dispense with examination of each of the literal requirements of Rule 15(c), and instead focus on the questions of fair notice and absence of undue prejudice." *Olech*, 138 F.Supp.2d at 1042; *See also Paskuly v. Marshall Field & Co.*, 494 F.Supp. 687, 688–89 (N.D.Ill.1980), *aff'd*, 646 F.2d 1210 (7th Cir.), *Cert. denied*, 454 U.S. 863, 102 S.Ct. 321, 70 L.Ed.2d 162 (1981); *In Re RDM Sports Group, Inc.*, 253 B.R. 298, 303–05 (Bkrtcy.N.D.Ga.

2000); *Tessier v. Moffatt*, 93 F.Supp.2d 729, 736–37 (E.D.La.1998).

■ Therefore, "the central underlying question which a court must decide when determining whether a claim asserted by a new plaintiff shall relate back to the time of the original plaintiff's claim is whether the defendant had such notice of the added claim at the time the action was commenced that relation back of the added claim will not cause defendant undue prejudice." *Olech*, at 1042. By focusing on notice and prejudice these courts completely ignore the mistake requirement. These courts rationalize the dropping of the mistake requirement by reasoning that the Advisory Committee Notes do not require a literal application of Rule 15(c) to plaintiffs. Additionally, the *Olech* court says that "mechanically applying the mistake requirement to the addition of a new plaintiff would make little sense" because "[i]mposing a mistake requirement would serve no substantive purpose, but only erect a needless barrier to adjudication of claims on the merits, contrary to the spirit and inclination of Rule 15(c)." *Id.* at 1043 (citation omitted). This Court agrees with the reasoning of the *Olech* court.[6]

■ Therefore, "[i]n determining whether the addition of claims by *new* plaintiffs will relate back, [the Court must] appl[y] a four-factor inquiry to determine whether the Rule 15(c) requirements of fair notice and lack of prejudice have been

---

**5.** In *Schorsch v. Hewlett–Packard Co.*, 417 F.3d 748 (7th Cir.2005), the court said a change in class definition did not add new plaintiffs because class members are not litigants. *Id.* at 750. Even if the Court adopted this position, it would not change the result reached herein. The change to the litigation wrought by the Amended Petition is sufficiently significant to constitute a new "commencement" of an action.

**6.** The Court notes that the Defendants claimed in their Response Brief that "[t]he controlling authorities are clear that the failure to add the party must be the result of mistaken identity...." Needless to say, the controlling authority is not clear at all. In fact, no clear authority exists in Oklahoma, the Tenth Circuit, or the Supreme Court. Additionally, the balance of secondary sources of law appears to tilt in favor of ignoring the mistaken identity requirement for purposes of adding plaintiffs.

**1316**

met." "These factors include whether or not (1) the new plaintiff's claim arose out of the 'same conduct, transaction or occurrence' set forth in the original complaint; (2) the new plaintiff shares an 'identity of interest' with the original plaintiff; (3) the defendants have 'fair notice' of the new plaintiff's claim; and (4) the addition of the new plaintiff causes the defendants prejudice." *Id.*

In order to relate back the Plaintiff must establish that the claims in the Amended Petition arise out of the same conduct, transaction, or occurrence. It is apt to describe the challenged conduct or transaction in the Original Petition as the alleged low-balling of the Plaintiff's property damage. By calling into question the insurance adjustment process in the Original Petition, the Defendants received notice that their adjustment process was being challenged. In this regard, the claims in the Amended Petition *arguably*[7] arose out of the same conduct, transaction or occurrence as the claim in the Original Petition.

■ Pursuant to the identity of interest principle, "the institution of an action against one party will constitute imputed notice to a party subsequently named by an amendment of the pleadings when the parties are closely related in their business activities...." *Bray v. Thomas Energy Systems, Inc.*, 909 P.2d 1191, 1194 (Okla. App.1995) (citation omitted). In the present litigation, the new Plaintiffs have purchased insurance from the Defendants. Additionally, they have filed an insurance claim with the Defendants. Finally, they are all allegedly victims of the Defendants' alleged low-balling technique. That is the extent of the Plaintiffs' closely related interest.

■ In contrast to their similarities, the Plaintiffs have numerous differences. They all have separate contracts, for separate property, with differing monetary value. They are from many different states throughout the country, and perhaps beyond. The facts related to each individual's claim are unique to each Plaintiff. In addition the Plaintiffs are complete strangers. *See Paskuly*, 494 F.Supp. at 689 (holding "it is rare that an amendment will relate back which adds plaintiffs who are total strangers to the lawsuit"). Thus, after considering relevant case law, it is the conclusion of the Court that the new Plaintiffs are not "closely related" such that the Amended Petition relates back to the filing of the Original Petition.

■ In addition to finding that the Plaintiffs do not share an identity of interest, the Court finds persuasive the supplemental authority from the Western District of Washington, provided by the Defendants, which states that "notice from the initial [individual] complaint ... cannot serve as 'adequate' notice of all claims on behalf of all plaintiffs who might someday fall with in [sic] the class definition." *Heaphy v. State Farm Mutual Automobile*, 2005 WL 1950244, *4 (W.D.Wash.). Therefore, the Defendant was not given "fair notice" either. Distinguishable is *Paskuly v. Marshall Field and Co.*, 646 F.2d 1210 (7th Cir.1981), where the original petition alleged a violation of a company-wide policy.

Thus, for the purposes of Rule 15(c) the Amended Petition is equivalent to filing a new cause of action. Consequently, given the analysis above the Court finds that the filing of the Amended Petition was a de facto commencement of a new suit. Therefore, it is removable pursuant to

---

7. The emphasis is used to indicate that this finding is applicable only for the present procedural posture and should not be considered binding in any way for future issues. In other words, it is not the law of the case.

CAFA. *See also Knudsen v. Liberty Mutual Ins. Co.*, 411 F.3d 805, 807 (7th Cir.2005)(stating that "a new claim for relief (a new 'cause of action' in state practice), the addition of a new defendant, or any other step sufficiently distinct that courts would treat it as independent for limitation purposes, could well commence a new piece of litigation for federal purposes even if it bears an old docket number for state purposes.").

While that is the ruling, the Court must say that it is not overly enamored with either the analytical framework or the result that framework produces. The Court would prefer a bright line test: i.e., that a claim is commenced with the filing of the original complaint (or petition). Such a test, with no exceptions, would not only be logical (i.e. a claim commences when it commences) but also predictable. Multi-factor, sliding scale, balancing tests do more than leave lawyers and litigants mired in unpredictability; they also put too much power in the hands of federal judges. While the test here is consistent with the precedent on this issue and not entirely elusive, it produces a much closer question than a bright line test.

## II. Amount in Controversy

■ The Plaintiff also contends that the Defendants failed to properly establish that the amount in controversy exceeds $5,000,000. The Court finds this argument unpersuasive. The Court acknowledges that, typically, the party invoking federal jurisdiction bears the burden of demonstrating it exists, *Steele Co. v. Citizens for a Better Env't*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), and any doubt as to the propriety of removal is resolved in favor of remand. *United States ex rel. King v. Hillcrest Health Center, Inc.*, 264 F.3d 1271, 1280 (10th Cir.2001). Defendants contend, however, that CAFA flips the traditional removal jurisprudence on its head.

Several courts have held that it is the intent of Congress that "if a purported class action is removed pursuant to [CAFA], the named plaintiff(s) should bear the burden of demonstrating that the removal was improvident." *Waitt v. Merck & Company, Inc.*, 2005 WL 1799740, *2 (W.D.Wash.); *Harvey v. Blockbuster, Inc.*, 384 F.Supp.2d 749, 752 (D.N.J.2005); *In Re Textainer Partnership Securities Litigation*, 2005 WL 1791559, *3 (N.D.Cal.). The Court agrees this view perhaps better comports with the purpose of CAFA. This Court is not, however, sanguine about the reliance by these courts on CAFA's legislative history rather than the precise language of the statute itself.

In that regard, the Plaintiff cites *Schwartz v. Comcast Corp.*, 2005 WL 1799414 (E.D.Pa.), for the proposition that "Congress implicitly acknowledged and adopted the longstanding rule that a removing defendant bears the burden of proof for establishing diversity jurisdiction." *Id.* at *7. The court also stated "[h]ad Congress intended to make a change in the law with respect to the burden of proof, it would have done so expressly in the statute....It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think is the preferred result." *Id.*

■ While the Court does not necessarily agree that Congress's failure to "expressly" modify the law with respect to burden of proof constitutes an implicit adoption of the traditional rule, the Court agrees that it is not the role of the judiciary to correct drafting errors. The Tenth Circuit has stated that the removing party, at a minimum, has the burden to prove by a preponderance of the evidence that the jurisdictional amount has been satisfied. *See Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir.2001). This showing must be evident from the face of

the petition or the notice of removal itself. *See Laughlin v. Kmart Corporation*, 50 F.3d 871, 873 (10th Cir.1995). While the purpose of CAFA may arguably militate in favor of reversing this burden, Congress did not expressly say so in the statute. This Court is loath to ignore the long-standing precedent of this Circuit on the ethereal basis of Congressional intent unstated in the actual language of the law. Therefore, the Court will not reverse the burden of proof on this issue.

██ Nevertheless, the Court finds that the face of Plaintiff's Amended Petition and the face of Defendants' Notice of Removal have shown, at the very least, by a preponderance of the evidence that the amount in controversy exceeds $5,000,000. First, as stated in the Amended Petition and in the Notice of Removal, the class includes "thousands of insureds." Second, in the Amended Petition, the named Plaintiff requests not only damages of an unspecified amount under the breach of contract claim, but also actual and punitive damages in excess of $10,000 each on two other separate claims. Furthermore, Defendants note in the Notice of Removal that Plaintiff claims that each of the "thousands" of class members were damaged by Defendants bad faith, which could result in additional damages of $100,000 or more under 23 O.S. § 9.1 for each proven individual claim. After making the reasonable inference that all class members are pursuing similar damages and after making some effortless mathematical calculations, the Court concludes that the face of the Amended Petition and the Notice of Removal show by at least a preponderance of the evidence that the amount in controversy far exceeds the $5,000,000 requirement. The Court also notes that Plaintiff has nowhere stipulated that the ultimate amount sought is less than $5,000,000.

Therefore it is the Order of the Court that the Plaintiff's Motion to Remand [Docket No. 11] is hereby DENIED.

**ORDERED THIS 15th DAY OF SEPTEMBER, 2005.**