Katonya **WRIGHT**, Shirley Wright, and Harris Barker, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**AMERICAN BANKERS LIFE ASSURANCE COMPANY OF FLORIDA, Defendant.**

C.A. No. 2:07–cv–3363–PMD.

United States District Court, D. South Carolina, Charleston Division.

April 1, 2008.

D. Michael Kelly, Mike Kelly Law Group, Columbia, SC, Charles Bradley Hutto, Williams and Williams, Orangeburg, SC, Daniel Webster Williams, Bedingfield and Williams, Barnwell, SC, for Plaintiffs.

Benjamin Rush Smith, III, Nelson Mullins Riley and Scarborough, Columbia, SC, for Defendant.

Amanda G. Steinmeyer, Mike Kelly Law Group, Columbia, SC, for Plaintiffs/Defendant.

### ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the court on Plaintiffs' Motion to Remand this action back to state court pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction. Defendant American Bankers Life Assurance Company of Florida ("Defendant" or "ABLAC") filed a Response in Opposition to Plaintiffs' Motion. Plaintiffs also moved the court for an award of attorneys' fees. For the reasons set forth herein, the court grants Plaintiffs' Motion to Remand and remands the case back to the Colleton County Court of Common Pleas, and denies Plaintiffs' request for attorneys' fees.

### BACKGROUND

On April 12, 2000, Katonya Wright and Shirley Wright (collectively, "the Wrights") filed a class action Complaint in the Colleton County Court of Common Pleas. The Wrights had purchased credit life insurance (a type of insurance in which the amount of the policy coverage continuously mirrors the balance on an underlying debt, so that in the event of the insured's death, the debt would automatically be paid off) through ABLAC on a consumer loan they had obtained through Greentree Financial in 1999. Plaintiffs alleged that ABLAC had charged excessive rates for the insurance policy in violation of two

provisions of the South Carolina Consumer Protection Code, §§ 37–4–202 and 37–4–203(5), and petitioned the court to certify a class consisting of all similarly situated insurance consumers who had purchased credit life policies from ABLAC.

On October 25, 2002, Circuit Judge Perry M. Buckner certified a class consisting of:

[A]ll current or former South Carolina residents who purchased credit life insurance policies issued by the Defendant described as:

1. Single Premium Gross Reducing Single Life Coverage;

2. Single Premium Gross Reducing Joint Life Coverage;

3. Single Premium Net Payoff Full Term Simple Interest Single Life Coverage;

4. Single Premium Net Payoff Full Term Simple Interest Joint Life Coverage;

5. Single Premium Net Payoff Truncated Simple Interest Single Life Coverage;

6. Single Premium Net Payoff Truncated Simple Interest Joint Life Coverage;

7. Single Premium Net Payoff Full Term Add On Interest Single Life Coverage;

8. Single Premium Net Payoff Full Term Add On Interest Joint Life Coverage;

9. Single Premium Net Payoff Truncated Add On Interest Single Life Coverage; or

10. Single Premium Net Payoff Truncated Add On Interest Joint Life Coverage;

prior to January 1, 2000, in connection with a consumer credit transaction on which a payment was made on or after April 1, 1999.

Class Certification Order at 12. On December 11, 2003, the state court entered its Order Approving Class Notice.

Both sides conducted discovery. Both sides filed motions for summary judgment with the state court. On September 6, 2006, Plaintiffs moved to amend their Complaint, seeking to add a new class representative, Harris Barker ("Barker"). Plaintiffs also sought to allege violations of § 37–4–203 generally, as opposed to violations of only § 37–4–203(5), which it had previously asserted. ABLAC opposed Plaintiffs' Motion to Amend, arguing that considering that the case had been ongoing for over six years and that discovery had already been completed by both sides, it would be unfair and prejudicial to allow Plaintiffs to add a new representative and add a new claim to the action.

On September 6, 2007, the state court granted Plaintiffs' Motion to Amend, adding Barker as a class representative and allowing Plaintiffs to add the new claims. Plaintiffs filed a Second Amended Complaint incorporating these changes on September 11, 2007. On October 10, 2007, ABLAC removed this case to this court on the grounds that this court properly had subject matter jurisdiction under the Class Action Fairness Act. 28 U.S.C. §§ 1332; 1453(b).

On November 9, 2007, Plaintiffs filed the present Motion to Remand back to the Colleton County Court of Common Pleas and asking for attorneys' fees for all costs related to litigating the remand issue. ABLAC filed a Response in Opposition to this Motion on November 28. Plaintiffs filed a Reply to this Response on December 17.[1]

---

1. Plaintiffs also sent this court a letter on February 7, 2008, citing an additional authority regarding whether remand is appropriate in the present matter. ABLAC responded with a letter on February 18, asking that the

## DISCUSSION

■ The burden of demonstrating jurisdiction resides with "the party seeking removal." *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir.2004) (citing *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir.1994)). The court is obliged to construe removal jurisdiction strictly because of the "significant federalism concerns" implicated. *Id.* Therefore, "[i]f federal jurisdiction is doubtful, a remand [to state court] is necessary." *Id.* Section 1447(c) of the United States Code provides that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

In 2005, Congress passed into the law the Class Action Fairness Act ("CAFA"), which altered the scenarios under which a defendant to a class action suit could remove the matter to federal court. Under the CAFA, one of the scenarios under which a defendant may remove the matter to federal court is when (1) the aggregate amount of all claims of all class members exceeds $5,000,000; (2) any member of the class is a citizen of a different state than any defendant; and (3) the action is removed within 30 days of the amendment which gave rise to the grounds for removal. 28 U.S.C. §§ 1332(d), 1446(b). In the present case, neither side disputes that all three of these factors exist, making the case removable under the CAFA.

However, the CAFA went into effect on February 18, 2005, and does not apply retroactively to class actions commenced earlier than that date. 119 Stat. 4 ("[T]his Act shall apply to any civil action commenced on or after the date of enactment of this Act."). Upon removing this action to this court, ABLAC argued that the

amendments contained in the Second Amended Complaint constituted a recommencement of the class action such that the operative date of commencement should be September 11, 2007, not April 12, 2000, and thus this class action was governed by the CAFA. Plaintiffs assert that the amendments did not recommence the class action suit, and assert that the CAFA does not apply to this action for this reason.

■ Generally speaking, an action commences when the complaint is filed and served upon the defendant. Fed.R.Civ.P. 3 ("A civil action is commenced by filing a complaint with the court."). Under certain circumstances, however, an amendment to a class action complaint can constitute a recommencement of the action, which, if the amendment took place after February 18, 2005, can trigger the removal provisions of the CAFA. *See, e.g., Prime Care v. Humana Ins. Co.*, 447 F.3d 1284, 1289 (10th Cir.2006). When determining whether an action is recommenced for CAFA purposes, courts look to the applicable state law. *See, e.g., Braud v. Transp. Serv. Co.*, 445 F.3d 801, 803 (5th Cir.2006); *Knudsen v. Liberty Mut. Ins. Co.*, 435 F.3d 755, 757–8 (7th Cir.2006); *Phillips v. Ford Motor Co.*, 435 F.3d 785, 787 (7th Cir.2006); *Plubell v. Merck & Co., Inc.*, 434 F.3d 1070, 1071 (8th Cir.2006); *Bush v. Cheaptickets, Inc.*, 425 F.3d 683, 686 (9th Cir.2005). The class action at issue in the present litigation was commenced in South Carolina state court, and thus in determining whether Plaintiffs' amendments constituted a recommencement, this court applies South Carolina law.

■ South Carolina courts have held that an amendment recommences an action only when the amendments do not

---

court either strike Plaintiffs' letter, or in the alternative, to accept ABLAC's letter distinguishing the authority cited by Plaintiffs as a reply to the letter. The court declines to

strike Plaintiffs' letter, and considers the authority cited by Plaintiffs, as well as ABLAC's arguments regarding why such authority is distinguishable from this case.

"relate back to" the date of the original pleading as provided for in Rule 15(c). *Whitfield Const. Co. v. Bank of Tokyo Trust Co.,* 338 S.C. 207, 525 S.E.2d 888 (S.C.Ct.App.1999). Rule 15(c) of the South Carolina Rules of Civil Procedure is identical to Rule 15(c) of the Federal Rules of Civil Procedure, and provides that an amendment relates back to the original complaint when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," or the amendment changes the party and the party had notice of the action, knew or should have known that they were likely to be brought into the action, and were not prejudiced by the amendment. S.C. R. Civ. P. 15(c). Where there is not clear South Carolina precedent, courts have held that courts interpreting South Carolina Rule 15(c) should also look to other courts' interpretation of Federal Rule 15(c). *Gardner v. Newsome Chevrolet–Buick, Inc.,* 304 S.C. 328, 404 S.E.2d 200, 201 (1991) ("[W]here there is no South Carolina law, we look to the construction placed on the Federal Rules of Civil Procedure.").

Class action complaints can be amended in three separate ways—the substantive claims alleged can be amended, the plaintiffs/class members can be amended, or the defendants can be amended. Here, Plaintiffs' amendment changed the class representatives bringing the suit and the substantive law Defendant is alleged to have violated.

## I. Did Plaintiffs' Amendment Recommence the Action?

### A. Did the Elevation of Barker to Class Representative Relate Back to the Original Complaint?

 Defendant asserts that the elevation of Barker from a class member to a class representative did not relate back to the original action, and thus recommenced the action for CAFA purposes. (Def.'s Memo. in Opp'n at 10.) As an initial matter, the court notes that this question is not explicitly governed by Rule 15. Rule 15(c) governs situations where "the amendment changes the party or the naming of the party *against whom a claim is asserted.*" (emphasis added). Here, Barker is not a party against whom any claim is being asserted. However, when considering whether the addition of a class representative "relates back to" the original complaint, a court should consider the sound principles embodied in Rule 15. The advisory committee notes to the 1966 amendments of Federal Rule of Civil Procedure 15(c) provides:

> The relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier. Again the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs.

Fed.R.Civ.P. 15(c) advisory committee's note on the 1966 amendment. "Under the Rule 15(c)(3) approach, an amendment relates back if 'the defendant knew or should have known that it would be called on to defend against claims asserted by the newly-added plaintiff,' unless 'the defendant would be unfairly prejudiced in maintaining a defense against the newly-added plaintiff.'" *Plubell,* 434 F.3d at 1072, quoting *Cliff v. Payco Gen. Am. Credits, Inc.,* 363 F.3d 1113, 1132 (11th Cir.2004); *see also Olech v. Village of Willowbrook,* 138 F.Supp.2d 1036, 1042 (N.D.Ill.2000) ("[T]he central underlying question which a court must decide when determining whether a claim asserted by a new plaintiff shall relate back to the time of the original plaintiff's claim is whether the defendant had such notice of the added claim at the time the action was commenced that rela-

tion back of the added claim will not cause defendant undue prejudice.").

■ The questions before this court in determining whether the relation back doctrine applies to Plaintiffs' elevation of Barker from a class member to a class representative, then, are (1) whether AB-LAC knew or should have known that it could be called upon to defend against Barker's claims; and (2) whether ABLAC would be unfairly prejudiced by having to defend against Barker's claims.

Defendant claims that it did not have notice that it would have to defend against Barker's claims. (Def.'s Memo. in Opp'n at 13–14.) Specifically, Defendant notes that Barker purchased a policy from AB-LAC on a loan he had obtained from Safeway Finance Corporation in 1993, whereas the Wrights purchased a policy on a loan they had obtained from Greentree in 1999. Furthermore, Defendant notes that Barker's insurance policy was a single premium *gross* decreasing credit life insurance policy, whereas the original plaintiffs' policy was a joint truncated *net* life insurance policy. Defendant asserts that there is a very important distinction between gross and net policies, and that they are rated in an entirely different manner. *Id.* at 13. Gross policies are rated on the *total* of all scheduled payments on the underlying debt, whereas net policies are rated only on the principal of the underlying debt.

The CAFA is a relatively new law, having only been in force for three years. As a result, only a few federal courts have had occasion to address issues related to the present issue. However, these few courts that have addressed issues relating to whether or not the addition of plaintiffs did not "relate back to" the original cause of action such that the action was recom-

menced for CAFA purposes and was thus rendered removable provide this court with valuable guidance as to how to decide the present case.

Plaintiffs rely primarily on three recent circuit court decisions involving amendments which added class representatives to a class action suits. In the first of these cases, the Eighth Circuit heard an appeal from a district court's grant of a motion to remand [2] in a class action lawsuit concerning allegations of deceptive trade practices in the development and marketing of a prescription painkiller. *Plubell v. Merck & Co., Inc.*, 434 F.3d 1070 (8th Cir.2006). The original class representative discovered that she had not in fact taken the drug in question, and so, during discovery, a new class representative was substituted. Applying Rule 15, the court inquired as to whether the new class representative's allegations arose out of the same "conduct, transaction, or occurrence" set forth in the original complaint. *Id.* at 1073. Ultimately, the court concluded that "[b]oth the original and the amended pleadings set forth exactly the same conduct by Merck; the only difference is the class representative." *Id.* The court then noted that, since the allegations of deceptive trade practices were exactly the same as those asserted in the original complaint, Merck could not have reasonably claimed to have been prejudiced by the substitution of a new class representative, since the substance of the claim it would be required to defend itself against had not changed. *Id.* Ultimately, the court decided that the amendment to substitute a new class representative did, in fact, relate back to the original complaint, and therefore the action had not been recommenced and was not properly removable, making remand appropriate.

2. While a district court's decision to grant a motion to remand is not ordinarily appealable, the CAFA contains a specific provision which enables a party which had removed a

class action to federal court under the CAFA only to have it remanded back to state court to directly appeal a district court's decision. 28 U.S.C. § 1453(c)(1).

The second case relied upon by Plaintiffs is a Seventh Circuit case involving a class action lawsuit alleging that an automaker had sold customers cars with shoddy, inadequate paint jobs. *Phillips v. Ford Motor Co.*, 435 F.3d 785 (7th Cir. 2006). When the plaintiffs amended their complaint to add an additional year of the automaker's manufactured car to the class definition, the plaintiffs also added a class representative who had purchased an automobile of that model year. The case was removed under the CAFA, but the plaintiffs then moved to remand the case back to Illinois state court, which the district court granted. On appeal, the Seventh Circuit ruled that the addition of this new class representative did not recommence the suit under the relation back doctrine, since the new class representative was asserting the same inadequate paint job claim as the other class representatives, and that since the substantive issue was the same as the one which the defendant had been given notice of, it was not prejudiced by this amendment. *Id.* at 788. Accordingly, the district court's granting of plaintiffs' motion to remand was upheld.

The most recent case relied upon by Plaintiffs is a Tenth Circuit opinion involving two concurrent class action lawsuits, one filed in state court and one filed several years later in federal court, involving many of the same parties and substantially similar claims against an oil company on behalf of certain parties. *Weber v. Mobil Oil Corp.*, 506 F.3d 1311 (10th Cir.2007). Not long after it was filed, the federal class action complaint was amended to add two defendants who were not parties to the state court class action. Months later, after CAFA had become law, the parties in the federal class action reached an agreement whereby the case would be dismissed and the plaintiffs would intervene in the state court class action, so that only one case would be going forward. At this point, however, the two defendants who had not originally been parties to the state court class action removed the state court case to federal court, asserting that the intervention had recommenced the action and did not relate back to the original complaint, and thus CAFA rendered the case removable. The court, relying upon *Plubell* and *Phillips*, ruled that the intervention did relate back to the original complaint, since the intervening plaintiffs fell within the original complaint's class definition and were not asserting any additional claims against the defendants. *Id.* at 1315.

For its part, Defendant primarily relies upon two recent cases, one of them a circuit court decision and the other a district court decision.[3] The most recent of

---

**3.** Both sides also discuss the case *Plummer v. Farmers Group, Inc.*, a district court case which also dealt with issues regarding whether a case was recommenced by an amendment such that it become removable under the CAFA. 388 F.Supp.2d 1310 (E.D.Okla. 2005). However, that case was entirely distinguishable from the present case, and the court does not find it sufficiently relevant to be persuasive on the questions of law before the court in the present matter. That case involved a plaintiff who initiated a single cause of action against an insurer, but then later amended the complaint to make it a class action on behalf of all similarly situated insureds. *Id.* at 1312. When plaintiff made this amendment, the formation of the new class added thousands of new plaintiffs to the suit as well as several new causes of action being asserted. *Id.* The court ultimately decided that such an amendment did not relate back to the original complaint, and thus the action was recommenced for CAFA purposes, and removal was proper. However, the facts of that case and the underlying facts of the present case are so distinct that the court finds that it is so distinguishable as to be irrelevant to the present case.

Similarly, Defendant cites to *Smith v. Nationwide Property and Cas. Ins. Co.*, a Sixth Circuit opinion in which the court held that an amendment did not relate back to the

these cases was a Sixth Circuit case which involved a class action lawsuit against an automobile insurer for breach of contract. *Hall v. State Farm Mut. Auto. Ins. Co.*, 215 Fed.Appx. 423 (6th Cir.2007). When the original class representative had personal ties to the trial court judge such that the judge believed she may have to recuse herself, a new class representative was substituted. The class had not yet been certified, and the new class representative had not been named as a member of the putative class in the initial complaint. In that case, applying Michigan state law, the court found that an unnamed member of an uncertified class was not a party to the initial action, and adding such a party to the class action as a class representative recommenced the action for CAFA purposes, rendering the case properly removable. *Id.* at 427.

The other case upon which Defendant's argument relies is an unpublished case out of a Washington district court. *Heaphy v. State Farm Mut. Auto. Ins. Co.*, 2005 WL 1950244 (W.D.Wash. Aug. 15, 2005). That case involved a claim against an automobile insurer alleging that the insurer had failed to disclose certain rights to the class of insureds. The initial class representative, after asserting the claim, was forced to arbitrate her claim. Before the arbitration result could be enforced by the court, though, the plaintiff filed an amended complaint asserting the same claims as the initial complaint. However, it had been discovered that, contrary to what was stated in the initial complaint, the initial class

representative never actually owned her car, even though she was asserting claims that could only be asserted by car owners relating to the value of the automobile. To this end, the plaintiff amended the complaint to add a new class representative, who owned his car. The new class representative was not a member of the class at the time he was added, and in fact his claim had not even arisen until after the initial complaint had been filed. At this point, the defendant removed the case to federal court under the CAFA. Even though the court acknowledged that the defendant definitely had notice that it may have to defend against the type of claims brought by the new class representative and would not be prejudiced by having to defend against such claims, the court ultimately determined that the addition of the new class representative did not relate back to the initial complaint because the factual circumstances of his claim were completely distinct from those of the original class representative. *Id.* at *4.

It is clear, then, that there is some tension between how various federal courts have determined whether the addition of a class representative recommences a class action under the relation back doctrine. The *Plubell*, *Phillips*, and *Weber* courts focused on the conduct of the defendants, and determined that the allegations of the new class representatives concerned the exact same conduct defendants were expecting to defend against from the allegations of the initial class representative(s). The *Hall* and *Heaphy* courts, on the other

original complaint, thus holding that the action had been recommenced and was subject to the CAFA. 505 F.3d 401 (6th Cir.2007). However, that case also involved an individual claim which was amended into a class action claim, and the Sixth Circuit placed great emphasis on the individual nature of each claim. *Id.* at 406. In fact, the court explicitly offered that, "[w]hile we do not offer an opinion with regard to whether a

defendant might be on notice from an original petition alleged [sic] a violation of a single company-wide policy, it is clear that such a situation is likely distinguishable from the matter before us here." *Id.* at n. 3. This is precisely what is being alleged in the matter before the court, where Plaintiffs' assert that Defendant systematically overcharged its customers for credit life insurance policies.

hand, focused on the specific factual circumstances of the new class representative's alleged injury and interactions with the defendant in determining that the amendment did not relate back to the original claim.

In the present case, this choice of approach is outcome determinative. Given that the claims asserted by both the Wrights and Barker involve allegations that Defendant charged credit life insurance premium rates in excess of those allowed by law, there seems to be no dispute that their allegations arise out of the same "conduct" of the Defendant. If the court focuses on this, then, the amendment will be found to relate back to the original complaint, rendering removal improper on this ground. However, there is also no disputing that Barker obtained his policy from ABLAC years earlier, and on a different underlying debt obligation, than the policy obtained by the Wrights. If the court focuses on whether the two allegations arose out of the same "transaction or occurrence," then, there is no doubt that the Wrights and Barker have two distinct claims, and thus adding Barker as a class representative would not relate back to the original complaint.

■ The two keystones of any inquiry into whether or not to apply the relation back doctrine is (a) notice to the defendants and (b) whether or not defendant would be prejudiced by the amendment. In the present case, ABLAC most certainly had notice from the outset that it was going to have to defend against claims like Barker's. While ABLAC now claims that it has not prepared to defend itself against allegations that it charged excessive rates on gross credit life policies, this claim does not stand up to scrutiny. When the state court initially certified the class and certified the Wrights as class representatives, it explicitly certified the class as covering credit life insurance policies rated on both a gross and net basis. During discovery, ABLAC notified the plaintiffs of all customers who had purchased gross and net credit life policies during the time in question, including Barker and other class members who had obtained gross policies. Defendant even researched and briefed the issue of its possible accountability for the allegation that it had charged unlawfully high rates on credit life insurance policies rated on a gross basis. (Pl.'s Ex. 17 at 26–30.)

The court also finds that Defendant would not be prejudiced by Barker's elevation to class representative status. Barker's allegations are extremely straightforward, and merely consist of a claim that he purchased a gross credit life insurance policy from Defendant on a consumer loan transaction he had entered into with Safeway Finance Corporation in late 1993. (Second Amended Complaint ¶¶ 19–20.) Defendant claims that it would be prejudiced by having to defend against these new allegations, but the court finds that any additional discovery or trial preparation that would be required of Defendant would be minimal. Defendant had ample notice that it would need to defend against allegations that it had charged rates in excess of those allowed by law on gross credit life insurance policies, so it was already expected to defend against Barker's underlying substantive claim.[4] Furthermore, any additional preparation or discov-

---

4. Defendant's argument that the Wrights were not able to bring claims on behalf of customers who had purchased gross credit life insurance is, essentially, an argument that the Wrights were inadequate representatives of many members of the class, as their claims could not be said to be typical of those class members as required by Rule 23. However, this argument is more properly addressed to the issue of whether the state court judge correctly certified the class in the first place. Defendant did repeatedly and consistently argue before the state court that the Wrights were inadequate class representatives, but the state court disagreed. By certifying the class as defined with the Wrights as the class repre-

ery required to defend against the particular factual circumstances of Barker's claim would be minimal. Since Barker was a class member, Defendant had already identified and produced information relating to Barker's policy. Given this, it would seem to require minimal diligence for Defendant, if it has not already done so, to identify and produce records and information on the price paid on premiums by Barker, the terms of the policy, and the amount of the debt covered. Any further relevant information sought by Defendant would seem to be easily ascertainable by no more than a few relatively simple depositions.

■ As detailed above, the law in this area is far from settled. However, in the class action context, shuffling and substitution of class representatives is not uncommon. To adopt the Defendant's inter-

pretation of the application of the relation back doctrine to adding or substituting a new class representative [5] would be adopting a rule that a class action was recommenced each time a new class representative was elevated if the underlying background factual basis of his or her claim was different from that of the existing class representatives, even if the new class representative's substantive claim was identical to the existing representatives'. The court rejects this interpretation, and finds much more persuasive the idea, embodied in the *Plubell, Phillips,* and *Weber* decisions, that the elevation or addition of a new class representative relates back to the original cause of action so long as the new class representative's claims are based upon the same or substantially similar underlying conduct of the defendant and defendant would not be prejudiced by the addition of the new

---

sentatives, the state court ruled that the Wrights were sufficiently typical of the class members and had a sufficiently common interest to represent all class members, including those who had purchased gross credit life insurance policies. This court has no appellate jurisdiction to *sua sponte* review a class certification decision made by the state court judge, and thus this court will not revisit the issue of the Wrights' ability to represent all class members.

5. As noted, Defendant's interpretation relies heavily upon the *Hall* and *Heaphy* decisions. However, both of those cases are distinguishable from the present case. In *Hall,* the court explicitly framed the issue as being whether "an unnamed member of an uncertified class is a 'party' at the time an action is first filed." *Hall,* 215 Fed.Appx. at 426. The court answered this question in the negative at least in part because it held that "Hall cannot be considered to have been a party to the uncertified class action prior to being designated as a named plaintiff." *Id.* at 428. The present case is distinguishable, since the class had long been certified when Barker was elevated to a class representative, and Barker had been a member of the class, giving Defendant notice of his claim.

In the *Heaphy* case, the court also determined that the addition of the new named plaintiff recommenced the class action, making it removable under the CAFA. However, in that case, the court emphasized that the original class representative's claims had already been fully arbitrated at the time plaintiffs attempted to amend the complaint, thus making the original action final. *Heaphy,* 2005 WL 1950244 at *3 ("As of the date of the arbitration award, Heaphy had no claims remaining, and the theoretical existence of a class which did have viable claims does not resurrect her claims, or keep the class action 'alive' and awaiting the appointment of additional representatives (or the assertion of new claims)."). The *Heaphy* court also factored into its decision that the putative new class representative "was not even a member of class at that time, despite allegations to the contrary" and did not even suffer the alleged harm until well after the initial complaint had been filed. *Id.* at *4. The Walkers' substantive claims have not been adjudicated in any way, and Barker's claim for relief predates the filing of the initial complaint, so neither of these factors is present in the case before the court.

class representative. Just as the court in *Plubell* did not require each new class representative to have bought the medicine in question in the same dosage from the same store, and just as the court in *Phillips* did not require that a new class representative buy precisely the same make and model of car from the same dealer, the court sees no reason why Barker must have purchased precisely the same type of credit life insurance from ABLAC as the Wrights on precisely the same underlying consumer debt in order for Barker's claims to relate back to the claims originally raised by the Wrights. The court finds it sufficient that Barker's allegations concern the same alleged conduct by the Defendant.

In the present case, Barker is asserting a claim that (a) was explicitly included in the initial class definition; (b) was quite clearly the source of a substantial portion of the plaintiff's discovery efforts; and (c) is, if not virtually identical, at the very least extremely similar in nature to the claim brought by the Wrights', as both involve the allegedly excessive rates charged by Defendant on credit life insurance policies. Given that Barker's factual allegations are hardly complex and that some of the relevant insurance information has already been identified and produced, the court does not accept Defendant's claim that it is somehow prejudiced by Barker's elevation to class representative.

Accordingly, the court finds that Barker's elevation to class representative related back to the original complaint, and thus this elevation did not constitute a recommencement of the action for CAFA removal purposes.

B. *Did the Additional Claims Asserted in the Amended Complaint Relate Back to the Original Complaint?*

The court now turns to the issue of whether or not the additional claims asserted by Plaintiffs constituted a recommencement of the action. South Carolina courts have held that:

> [T]he factors to determine whether or not a claim arose out of the same conduct, transaction, or occurrence set forth in the original pleading include: (1) whether a party defending against the new claim had notice of it; (2) whether the party seeking to add the new claim will rely on the same kind of evidence offered in support of the original claim to prove the new claim; and (3) whether unfair surprise to the defending party would result if the amendment were to relate back.

*Whitfield*, 338 S.C. at 223, 525 S.E.2d at 897.

The first task before the court is to determine exactly what changes were made to the claims asserted in the Complaint by the Second Amended Complaint. The initial Complaint asserted that the premium charged by the Defendant "exceeds the premium permitted by §§ 37–4–202 and 37–4–203(5) of the South Carolina Code." First Amended Complaint ¶ 16. The Second Amended Complaint, by contrast, charges that the premium charged by Defendant "exceeds the premium permitted by South Carolina Consumer Protection Code including but not limited to S.C.Code §§ 37–4–202 and 37–4–203." Second Amended Complaint ¶¶ 17, 21. Plaintiffs and Defendant disagree over to what extent this amendment changes the claims asserted. Defendant contends that the plain language of the "including but not limited to" language means that Plaintiffs are now asserting violations of the entire corpus of the South Carolina Consumer Protection Code, which encompasses over three hundred and fifty separate statutes. (Def.'s Memo. in Opp'n at 9–10.) Plaintiffs, on the other hand, contend that the only claims added by the amendment

were the other subsections of § 37–4–203, and do not address the "including but not limited to" language in their pleadings before this court. (Pl.'s Reply at 3–4.)

A thorough examination of the record leads to the inescapable conclusion that the "included but not limited to" language is the product of nothing more than careless drafting and oversight. At the August 21, 2007, state court hearing on the Plaintiffs' Motion to Amend the Complaint to both add Barker as a class representative and to add additional claims, neither side even brought up the possibility that any code sections other than §§ 37–4–202 and 37–4–203 would form the basis of Plaintiffs' claims. (Pl.'s Ex. 13 at 7–9, 14–15 (explicitly stating that Plaintiffs were seeking to amend only to allege violations of the entirety of § 37–4–203 instead of only § 37–4–203(5)).)

■ The judge never gave any indication that he believed the Plaintiffs were amending the Complaint to allege anything other than violations of §§ 37–4–202 and 37–4–203. In the order granting the Motion to Amend, the court quite explicitly expressed that it was only granting leave to amend to allege violations of the other subsections of § 37–4–203:

> Plaintiffs assert that Defendant allegedly unjustly charged excessive rates for single premium decreasing credit life insurance in violation of S.C.Code Ann. 37–4–202 and 37–4–203. Plaintiffs had previously alleged violations of 4–202 and 4–203(5) and now wish to amend the Complaint by alleging a violation of 4–203 in general. Plaintiffs represent that this amendment is needed, since 4–203(4) and other portions of 4–203 are applicable. Plaintiffs further represent the applicability of 4–203 has been fully raised, argued and briefed by the parties. While Defendant contests the applicability of 203(4) and 203 as interpreted by Plaintiffs, it does not contest that

the parties have argued and briefed the issue of its applicability.

> S.C.R.C.P. 15 provides that upon leave of Court parties shall be freely allowed to amend their pleading when justice so requires and does not prejudice any other party. Rule 15(b) further provides that when an issue is not in the pleadings which is litigated, it shall be treated in all aspects as if it had been raised in the pleadings and a motion may be made at any time to require pleadings to conform to the evidence of the relative positions of the parties. A Motion to Amend is within the sound discretion of the Court and the opposing party has the burden of showing prejudice. *Foggie v. CSX Transportation, Inc.*, 315 S.C. 17, 431 S.E.2d 587 (1993). The Court finds no prejudice will be caused to Defendant if the Complaint is amended.

> Plaintiffs' Motion to Amend is therefore granted.

(Order granting Motion to Amend at 1–2.)

The court clearly viewed the amendment as only adding to the Complaint allegations under all subsections of § 37–4–203, and not the entirety of the South Carolina Consumer Protection Code. Defendant points out, rightly, that this Order was actually drafted by the Plaintiffs and adopted as written by the state court, and such orders are entitled to less deference than those drafted by the court itself. *Cuthbertson v. Biggers Bros.*, 702 F.2d 454 (4th Cir.1983). However, the Order was still reviewed and issued by the court, and thus is owed at least some deference by this court. Furthermore, for the narrow purpose of the present inquiry, it is perhaps just as relevant that the Plaintiffs themselves, drafting their model order, explicitly only granted themselves leave to amend the Complaint to allege violations of § 37–4–203, instead of seeking permission to allege

violations of other provisions of the South Carolina Consumer Protection Code.

Since the filing of the Second Amended Complaint, Plaintiffs have never once given any sort of indication whatsoever that they intended to pursue a cause of action under anything other than §§ 37–4–202 and 37–4–203. Plaintiffs state explicitly in both the Memorandum in Support of the Motion to Remand and their Reply to Defendant's Motion in Opposition that they are only alleging violations of §§ 37–4–202 and 37–4–203. (Pl.'s Memo. in Support at 10; Pl.'s Reply at 7.) Although Defendant asserts that there are many other provisions of the South Carolina Consumer Protection Code which could be alleged by Plaintiffs, the Second Amended Complaint does not contain sufficient factual allegations to support such claims as required by South Carolina's fact pleading regime. Furthermore, having repeatedly and consistently stated that it is only alleging violations of §§ 37–4–202 and 37–4–203, at this point Plaintiffs would likely be estopped, either through judicial estoppel or through the law of the case doctrine, from asserting violations of any other statutory provisions without first obtaining leave to once again amend their Complaint.

Given that the entirety of the record save for a five-word phrase in the Second Amended Complaint indicates that Plaintiffs are only asserting violations of §§ 37–4–202 and 37–4–203, the court must conclude that the phrase "included but not limited to" was simply the result of a mistake in drafting the Complaint. It would be the height of inequitably elevating form over substance to hold in the present case that the Complaint had been amended to allege violations of all provisions for the South Carolina Consumer Protection Code. The court refuses to do so, and holds that the Complaint was only amended to change the alleged violation of § 37–4–203(5) to a violation of § 37–4–203.

The next matter the court must decide, then, is whether the addition of the alleged violation of the other subsections of § 37–4–203 "relates back to" the original complaint. Under South Carolina law, the addition of a new claim only relates back to the original complaint if (1) the defendant had notice of the new claim; (2) plaintiff(s) will use the same kind of evidence to support the new claim as he or she would to support the original claim; and (3) the addition of the new claim would not result in unfair surprise to the defendant. *Whitfield*, 338 S.C. at 223, 525 S.E.2d at 897.

In the original Complaint, Plaintiffs asserted that Defendant had violated §§ 37–4–202 and 37–4–203(5), a safe harbor provision which explicitly contains detailed tables with maximum rates that insurers may charge for credit life insurance premiums. S.C.Code Ann. § 37–4–203(5). The other subsections of § 37–4–203, particularly § 37–4–203(4), provide more general standards for the rates that insurers may charge for such premiums, as well as under what circumstances and to what extent credit life insurance rates are subject to regulation by the Department of Insurance.

While violations of the entirety of § 37–4–203 were not alleged in the initial Complaint, this allegation was made at least as early as 2002, and was brought up during the class certification hearing on August 15 of that year. (Pl.'s Ex. 10 at 10–18.) The issue was also brought up at another hearing before the state court on November 20, 2003. (Pl.'s Ex. 11.) Plaintiffs initially moved to amend the complaint to add a cause of action under § 37–4–203(4) on December 16, 2003, which was not ruled on, apparently due to the death of Plaintiffs' original counsel. (Pl.'s Ex. 12.)

Later in the litigation, both Plaintiffs and Defendant moved for summary judg-

ment in state court, and filed Responses and Replies accordingly. In these state court pleadings, both sides explicitly addressed the issue of whether the remainder of § 37–4–203 was applicable to the facts in the present litigation as a matter of law. (*See, e.g.,* Memo. of Law in Support of Def.'s Mot. for Summ. J. at 1; Pl.'s Memo. in Support of Mot. for Summ. J. at 2–3.)

As long as it is equitable to do so, the law favors the resolution of legal issues on their merits, not legal technicalities. Given that the issue of whether Plaintiffs have a cause of action under the remaining subsections, particularly subsection (4), of § 37–4–203, was raised over five years ago, was continuously raised and debated throughout the state court litigation, and was fully briefed and argued by both sides in the context of their respective motions for summary judgment, this court finds that the amendment to add a claim for relief under the entirety of § 37–4–203 relates back to the original complaint under South Carolina law. Defendant has had ample notice of this claim, Plaintiffs will not introduce any additional evidence to support this new claim, and there is no element of unfair surprise in requiring Defendant to defend against this claim. This claim is essentially fully prepared for a court of law to examine it substantively and decide whether it is applicable to the present circumstances or not.

Accordingly, the court finds that Plaintiffs have only amended the action to add a cause for relief under all subsections of § 37–4–203, not the entire South Carolina Consumer Protection Code, and that adding such a claim to this class action does not recommence the action. Therefore, this case is not properly removable under the CAFA on these grounds.

## C. Did Plaintiffs' Amended Complaint Change the Class Definition Such that It Recommenced the Action?

The next issue before the court is whether Plaintiffs' amendment changed the class definition. Defendant alleges that Plaintiffs' Amendment changed the definition of the class. (Def.'s Memo. in Opp'n at 15–16.)

When class action plaintiff(s) amend the class action such that it substantially expands the definition of the class itself, this may not relate back to the original complaint and may recommence the action for CAFA removal purposes. *See, e.g., Knudsen v. Liberty Mut. Ins. Co.,* 435 F.3d 755 (7th Cir.2006); *Senterfitt v. SunTrust Mortg., Inc.,* 385 F.Supp.2d 1377 (S.D.Ga.2005). When determining whether this amendment relates back to the initial action or not, courts generally look at two factors. First, courts look at whether or not the defendant was on notice that it would have to defend against the claims of the new class. *Knudsen,* 435 F.3d at 757–58. *See also Senterfitt,* 385 F.Supp.2d at 1380 ("For an amendment to relate back to the date of the original complaint, the original complaint must have provided adequate notice to the defendant 'not only of the substantive claims being brought against [it], but also of the number and generic identities of the potential plaintiffs who may participate in the judgment.'") (quoting *Cliff v. Payco Gen. Am. Credits, Inc.,* 363 F.3d 1113, 1133 (11th Cir.2004)). The second factor courts look at when the class is expanded is whether defendant is unfairly prejudiced by the class expansion such that it has a negative impact "on a defendant's ability to adequately maintain a defense against the newly-added plaintiffs." *Senterfitt,* 385 F.Supp.2d at 1381.

In the present case, Defendant asserts that Plaintiffs impermissibly changed the class definition. The original class certifi-

cation order specified that the class included all residents who had purchased credit life insurance "prior to January 1, 2000, in connection with a consumer credit transaction on which a payment was made on or after April 1, 1999." (Class Certification Order at 12.) In the Second Amended Complaint, Plaintiffs define the class as encompassing all who purchased credit life insurance polices from the Defendant "from April 1, 1997 through December 31, 1999, or who have made payment between April 1, 1999 through December 31, 1999 on a contract in which the premium was financed." (Second Amended Complaint ¶ 7.)

Defendant fails to specify exactly how the class definition has been changed, and beyond making broad conclusory statements, fails to specify how it is prejudiced by such a change. The court fails to see how the new proposed definition expands the class in any way. It seems that anyone who could qualify as a class member under the definition given in the Second Amended Complaint would also qualify under the definition given in the original class certification order. No additional claims have been raised, and no extra time or resources need be expended by Defendant on discovery or preparation for litigation.

Accordingly, the court finds that Plaintiffs' have not altered the class definition, and thus have not recommenced this class action for CAFA removal purposes.

The court finds, then, that all of Plaintiffs' amendments to the Complaint, including the elevation of Barker to class representative, the additional claims under § 37–4–203, and the reworded definition of the class itself, relate back to the initial Complaint, and thus have not recommenced the class action for CAFA purposes. This means that the date on which the action was commenced remains the date on which the original Complaint was filed (April 12, 2000), and this action is not governed by the CAFA. For this reason, the appropriate venue for this action is in the Colleton County Court of Common Pleas, and Plaintiffs' Motion to Remand is therefore granted by this court.

## II. Attorneys' Fees

The final remaining matter to be decided by this court is whether to award attorneys' fees to Plaintiffs for the cost of litigating the remand and removal. Plaintiffs have requested that this court award them attorneys' fees to cover the cost of litigation relating to the removal and subsequent remand of this issue. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court has held that under 28 U.S.C. § 1447(c), "the standard for awarding fees should turn on the reasonableness of the removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005). The rationale behind the award of attorneys' fees in cases of wrongful remand is to prevent parties from removing cases to federal court merely as a delay tactic in litigation.

Here, however, there is no indication, and the court does not believe, that this was the case. This was a complex question of law on which there is no clear precedent. Defendant had a reasonable, cogent argument, supportable by some analogous caselaw, that Plaintiffs' Second Amended Complaint did not relate back to the original Complaint, and thus the action was recommenced and then became removable to this court under the CAFA. To adopt a rule where the court awarded attorneys' fees in every case which is ultimately remanded back to state court would be entirely counterproductive, in that it would have a chilling effect on those wishing to remove cases to federal court in all but the most certain cases. The court

cannot and will not take such a step, as parties who reasonably believe it is their right to have their case heard in federal court should not be discouraged from seeking to exercise that right.

Accordingly, the court finds that Defendant had a reasonable basis for removing the case, and Plaintiffs' Motion for Attorneys' Fees is denied.

### CONCLUSION

It is therefore **ORDERED,** for the foregoing reasons, that Plaintiffs' Motion to Remand this matter to the Colleton County Court of Common Pleas is **GRANTED.** Furthermore, Plaintiffs' request for attorneys' fees relating to Defendant's removal of this matter to this court is **DENIED.**

**AND IT IS SO ORDERED.**